UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES L. PENA,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:19cv124(KAD) |
| COUNSELOR SUPERVISOR ALDI, ET AL.<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

**Preliminary Statement**

The plaintiff, James L. Pena ("Pena"), is currently confined at Corrigan-Radgowski Correctional Institution ("Corrigan"). He has filed a civil rights complaint against Counselor Supervisor Aldi, Unit Manager Tammaro, Captain Kelly, Lieutenant Bragdon, Correctional Officers Nichols, John Doe #1 and John Doe #2 and Mental Health Worker J. Baennan. He alleges that during his confinement at Corrigan from January to November 2018, the defendants were deliberately indifferent to his safety and health and used excessive force against him. For the reasons set forth below, the complaint is dismissed in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

In January 2018, Pena, then a pretrial detainee, was confined in B-Pod, a Security Risk Group unit at Corrigan. *See* Compl. at 3 ¶ 1 & at 4 ¶ 7. On January 4, 2018, Pena sent a request to Unit Manager Tammaro seeking to be transferred from B-Pod to general population or to protective custody because he felt his safety was at risk. *See id.* He contended that his continued presence in the Security Risk Group unit might result in harm to his health or jeopardize his safety because he was no longer a member of the Bloods gang and because of the nature of the criminal charges, sexual assault in the second degree, pending against him. *See id.* & at 8 ¶¶ 33-34. He claimed that the Bloods gang had targeted him for assault or serious harm. *See id.* On January 8, 2018, Unit Manager Tammaro responded that he was tired of talking about the issue and instructed Pena to contact Counselor Supervisor Aldi. *See id.* at 4 ¶ 8.

Between January 6, 2018 and January 15, 2018, Pena spoke to Counselor Supervisor Aldi in person and sent him a written request documenting his concerns about remaining in the Security Risk Group unit and seeking to be transferred to general population or to protective custody. *See id.* ¶ 11. Counselor Supervisor Aldi sent Pena a written response to his requests indicating that he would remain in the Security Risk Group unit. *See id.*

Pena filed a grievance regarding the responses of Counselor Supervisor Aldi and Unit Manager Tammaro to his concerns for his safety and his requests to be transferred to general population or to protective custody. *See id.* ¶ 12. He did not receive a response to his grievance. *See id.* at 4-5 ¶ 12.

"[A]round January-16-2018/February," Counselor Supervisor Aldi toured of B-Pod. *See id.* at 5 ¶ 16. Pena informed Aldi that his presence in B-Pod could result in a life-threatening injury and requested to be placed in protective custody. *See id.* Counselor Supervisor Aldi indicated that Pena would be staying in B-Pod. *See id.* Pena claims that Counselor Supervisor Aldi was aware that other correctional officers had treated him "cruelly" due to the fact that he had been charged with sexual assault. *See id.* ¶ 18.

On June 8, 2018, officials sent Pena to the restrictive housing unit because he had threatened a correctional officer. *See id.* ¶ 19. Upon his release from the restrictive housing unit, prison officials placed Pena in E-Pod, a Security Risk Group unit. *See id.* On June 29, 2018, Pena sent a written request to Captain Kelly claiming that his continued presence in the Security Risk Group unit might result in harm to his health or jeopardize his safety because the gang of which he was formerly a member had targeted him for assault or serious harm and because of the nature of the criminal charge, sexual assault in the second degree, pending against him. *See id.*

at 5-6 ¶ 19. Captain Kelly responded that he would visit Pena and mentioned something about Counselor Supervisor Aldi telling him "unless [Pena] g[a]ve him a name." *See id.* at 6 ¶ 19.

On November 14, 2018, another inmate, who was a member of a gang, assaulted Pena in the Day Room in E-Pod. *See id.* ¶ 20. The inmate stated that he had assaulted Pena because Pena was a non-gang member with a rape charge. *See id.* The inmate commented that he was also "being set up by John Aldi" and that Pena "couldn't live [in the unit] with a sex charge." *See id.* ¶ 21.

Officers Nichols, John Doe #1 and John Doe #2 responded to the scene of the altercation and secured Pena against the wall. *See id.* ¶ 22. Pena was compliant with all orders given by Officers Nichols, John Doe #1 and John Doe #2. *See id.* At some point, Officers Nichols, John Doe #1 and John Doe #2 slammed Pena to the floor. *See id.* As Pena lay pinned to the floor, Officer Nichols secured his left arm by pulling it behind his back and "beyond its limitation." *See id.* Officer Nichols then twisted Pena's wrist, punched him in the ribs and called him a rapist. *See id.*

Officer John Doe #1 put his knee into Pena's lower back and used unnecessary force to press Pena's face to the ground. *See id.* at 7 ¶ 23. Officer John Doe #2 secured Pena's right arm by pulling it behind his back and "beyond it[s] limitation," twisted Pena's wrist and punched him in the ribs. *See id.* ¶ 24. Lieutenant Bragdon was present at the scene and supervised the use of force by Officers Nichols, John Doe #1 and John Doe #2. *See id.* ¶ 25. After Officers Nichols, John Doe #1 and John Doe #2 had restrained Pena and placed him in handcuffs, Lieutenant Bragdon sprayed Pena in the face with mace/pepper spray. *See id.* at 4 ¶ 8. When Pena questioned why Lieutenant Bragdon had sprayed him with mace and stated that he could not

breathe, Lieutenant Bragdon told Pena to stop complaining and threatened to spray him again. *See id.* ¶¶ 26, 28.

A medical staff member treated Pena for a swollen and bruised face, cuts on the side of his nose and lip, a busted lip, a black eye and bruises and cuts on his wrists. *See id.* at 8 ¶ 30. Prison officials placed Pena in the restrictive housing unit and issued him disciplinary report for fighting. *See id.* ¶ 31.

On November 15, 2018, Pena filed a request and a grievance regarding the assault. *See id.* ¶ 32. On November 16, 2018, Pena met with Captain Kelly and stated that the incident involving his assault could have been avoided had prison officials placed him in protective custody at an earlier date. *See id.* ¶ 33. Pena asked to be placed in protective custody. *See id.* Captain Kelly indicated that he would help Pena, if Pena gave him information on the Bloods gang. *See id.* Pena stated that he was no longer a member of the Bloods gang and that after his arrest, members of the gang had targeted him for assault or serious harm. *See id.* ¶ 34. Captain Kelly indicated that he had reviewed the video footage of the incident involving the assault and that it looked like Pena had been set up. *See id.* ¶ 35. He asked Pena who had set him up and Pena stated that he did not know. *See id.* Captain Kelly indicated that he would "see what he [could] do for [Pena]." *See id.*

Pena submitted additional requests and grievances claiming that his continued presence in the Security Risk Group unit would result in a serious harm to his health, Officers Nichols, John Doe #1 and John Doe #2 had used excessive force against him and Counselor Supervisor Aldi and Unit Manager Tammaro had failed to take action in response to his complaints of threats to his safety prior to his assault by a gang member. *See id.* ¶ 36. He requested to be

5

placed in protective custody. *See id.* He submitted a separate request to the mental health unit indicating that he was experiencing emotional distress and would like to be seen. *See id.* at 9 ¶ 37. A mental health worker by the name of J. Baennan responded to Pena's request and indicated that the mental health department could not "assist in this issue" and suggested that if he was concerned for his safety, he should write to a custody official to request that he be placed in protective custody. *See id.* ¶ 38.

On November 26, 2018, pursuant to Pena's plea of guilty to the charge of sexual assault in the second degree, a Superior Court Judge sentenced Pena to ten years of imprisonment, execution suspended after five years of imprisonment and followed by ten years of probation.[1] On that same date, Captain Kelly informed Pena that he would be transferred to MacDougall-Walker Correctional Institution ("MacDougall-Walker") and placed in phase two of the Security Risk Group program. *See id.* ¶ 40. Pena questioned why prison officials were transferring him to a Security Risk Group unit with more restrictive conditions of confinement. *See id.* Captain Kelly indicated that Pena was complaining too much and attempting to "get some of his good friend[s] in trouble." *See id.*

On November 29, 2018, prison officials at Corrigan transferred Pena to MacDougall-Walker and placed him the Security Risk Group unit on "N.I.C. status." *See id.* ¶ 42. Mental health staff members at MacDougall-Walker examined Pena and diagnosed him as suffering

---

[1] The Connecticut Superior Court docket reflects that a judge sentenced Pena to terms of imprisonment in three different criminal cases on November 26, 2018. In addition to the sentence imposed pursuant to Pena's plea of guilty to one count of sexual assault in *State v. Pena*, U04W-CR17-0447627-S, a judge sentenced Pena to five years of imprisonment pursuant to his plea of guilty to one count of criminal possession of a gun in *State v. Pena*, Docket No. U04W-CR17-0447616-S and a judge sentenced Pena to five years of imprisonment pursuant to his plea of guilty to one count of assault on a public safety officer in *State v. Pena*, Docket No. U04W-CR16-0440634-S. Information regarding all three cases may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up, Criminal/Motor Vehicle, Convictions – by Docket Number using U04W-CR17-0447627-S, U04W-CR17-0447616-S and U04W-CR16-0440634-S.

from post-traumatic stress disorder. *See id.* ¶ 43.

**Discussion**

Pena asserts claims of excessive force, failure to protect him from harm and deliberate indifference/cruel and unusual punishment under the Due Process Clause of the Fifth and Fourteenth Amendments. The allegations are also construed as asserting a First Amendment retaliation claim against Captain Kelly. Pena asserts state law claims of negligence, intentional infliction of emotional distress, assault and battery and false imprisonment.

### Official Capacity – Request for Money Damages

Pena sues the defendants in their individual capacities and their official capacities and seeks compensatory and punitive damages and injunctive relief. To the extent that he seeks money damages from the defendants in their official capacities, such a request for relief is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity). Accordingly, the claims for monetary damages against the defendants in their official capacities are dismissed. *See* 28 U.S.C. § 1915A(b)(2).

### Official Capacity Requests for Injunctive Relief

The complaint includes several requests for injunctive relief. Pena seeks an order directing defendants Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly to "admit their wrongs" and an order directing defendant Aldi to release him to general population or to protective custody and to restore his privileges.

Regarding the request that the defendants admit their wrongs, although Pena has characterized this request as a request for injunctive relief, it is tantamount to a request for a declaration that these defendants violated his constitutional rights in the past as averred in the complaint. This is not proper. *See See Ex Parte Young*, 209 U.S. 123, 155-56 (1908)(A party may seek **prospective** injunctive and declaratory relief against state officials acting in violation of federal law.) Indeed, the Eleventh Amendment precludes requests for declaratory or injunctive relief for prior violations of federal law. *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"). Thus, a request for a declaration that Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly violated Pena's federal constitutional rights as alleged in the complaint is barred and this claim for relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Regarding Pena's request that the court order Counselor Supervisor Aldi to transfer him from the Security Risk Group program to general population and to restore the privileges that he lost as a result of being placed in the Security Risk Group program, such relief is not related to the allegations in the complaint. A request for injunctive relief must relate to the claims in the complaint. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (observing that a preliminary injunction is appropriate to grant intermediate relief of "the same character as that which relief may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside the issues in the suit"); *see also Oliphant v. Quiros*, 2010 WL 2180780, at *1 (D. Conn. May 19, 2010) ("[T]he petitioner must establish a relationship between the injury claimed in the motion seeking injunctive relief and the conduct

8

giving rise to the action.") (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)). Indeed, the court notes that Pena has filed a separate action challenging his placement in the Security Risk Group program. *See Pena v. Semple, et al.*, Case No. 3:19cv261(KAD). That action remains pending.

Accordingly, the requests for injunctive relief seeking an order directing defendant Aldi to release him to general population and to restore his privileges is dismissed. *See* 28 U.S.C. § 1915A(b)(1). The court will permit the request for injunctive relief seeking an order that Pena be placed in protective custody as such request appears to relate to his Fourteenth Amendment claim against defendant Aldi in his official capacity.

**Fifth Amendment – Due Process**

In his description of his legal claims, Pena states that he is asserting a claim against the defendants for violating his right to due process under the Fifth as well as the Fourteenth Amendment. The Fifth Amendment due process clause, however, applies only to actions by the United States government and federal employees. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002), (holding that the Fifth Amendment's Due Process Clause only protects citizens against the conduct of federal government officials, not state officials); *Cabrera v. City of New York*, No. 16-CV-2298 (RRM) (RER), 2018 WL 4636798, at *9 n.6 (E.D.N.Y. Sept. 27, 2018) ("The Due Process provision of the Fifth Amendment applies in actions against the federal government, not against state or local governments and officials.") Accordingly, the Fifth Amendment claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment – Excessive Force**

Pena alleges that Officers Nichols, Doe #1 and Doe #2 and Lieutenant Bragdon used

9

excessive force following the assault on him. An excessive force claim asserted by a pretrial detainee arises under the Fourteenth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("pretrial detainees . . . rely on the [Fourteenth Amendment's] constitutional guarantee of "due process" as the source of an excessive force claim). In *Kingsley v. Hendrickson,* ⎯⎯ U.S. ⎯⎯, 135 S. Ct. 2466 (2015), the Supreme Court held that pretrial detainee suits for excessive force arising under the Fourteenth Amendment are properly analyzed using an objective, not subjective, standard. Specifically, the Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at ___, 135 S. Ct. at 2473.

The Supreme Court cautioned district courts not to "mechanically" apply the objective reasonableness standard, because "objective reasonableness turns on the facts and circumstances of each particular case." *Id.* at 2473 (citation omitted). Various considerations "may bear on the reasonableness or unreasonableness of the force used," including the "relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among others. *See id.*

Here, Pena has stated a plausible claim of excessive force against Officers Nichols, Doe #1 and Doe #2 arising from their conduct following the assault on Pena by another inmate. Pena has also plausibly alleged an excessive force claim against Lieutenant Bragdon arising out of the use of mace/pepper spray on Pena. Therefore, these Fourteenth Amendment claims will proceed against Lieutenant Bragdon, Officers Nichols, Doe #1 and Doe #2 in their individual capacities.

**Fourteenth Amendment – Failure to Protect**

Pena alleges that he made Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly aware of a risk of harm that he faced from inmate members of the Bloods gang and requested protective custody or to be moved from the Security Risk Group unit. These defendants denied Pena's requests and he was subsequently assaulted by another inmate. As a result, he brings a claim that these defendants were deliberately indifferent to his health and safety and failed to protect him from harm.

Because Pena was a pretrial detainee at the time of the assault, the court analyzes his deliberate indifference to safety/failure to protect claim under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). To state a claim for deliberate indifference to safety or failure to protect from harm, Pena must allege facts satisfying two elements. He must show that he suffered a sufficiently serious constitutional deprivation and that the defendants acted with deliberate indifference. *See Christian v. Warden of O.B.C.C.,* No. 17 Civ. 2587 (GBD)(BCM), 2018 WL 1441401, at *2 (S.D.N.Y. Mar. 22, 2018).[2]

As to the first showing, the Supreme Court has observed that "[b]eing violently assaulted in prison is simply not "'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v Chapman*, 452 U.S. 337, 347 (1981). Consequently, prison officials have a duty to engage in reasonable measures to ensure the safety of inmates and "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833

---

[2] In *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held that in evaluating a pretrial detainee's claim for use of excessive force, the officer's conduct is assessed using only an objective standard. In *Darnell*, the Second Circuit held that the reasoning from *Kingsley* should be applied to other inmate claims, to include claims of deliberate indifference to safety or failure to protect from harm. 849 F.3d at 35 & 33 n.9; *see also, e.g., Hodge v. City of New York*, No. 19-CV-2474(CM), 2019 WL 1455170, at *2 (S.D.N.Y. Apr. 1, 2019) (applying *Darnell* to claim for deliberate indifference to risk of harm claim).

(internal quotation marks and citation omitted).

As to the second, deliberate indifference is established where "the defendant acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that condition imposed an excessive risk to health or safety." *Darnell,* at 35.

Pena alleges that beginning in January 2018, he repeatedly made Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly aware both verbally and in writing that the Bloods gang, of which he was no longer a member, had targeted him for assault or bodily harm and that the nature of his criminal charges also put him at risk for assault. Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly refused to place Pena in protective custody or remove him from the Security Risk Group unit which housed inmate members of the Bloods gang. On November 14, 2018, an inmate gang member physically assaulted Pena. The court concludes that Pena has stated a plausible Fourteenth Amendment claim of failure to protect against Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly and this claim claim will proceed against them in their individual capacities.

**Fourteenth Amendment – Failure to Protect/Denial of Mental Health Treatment**

Pena also asserts that Mental Health Worker Baennan failed to protect him from harm and was deliberately indifferent to him. Pena alleges that at some point after the assault, he submitted a request to Mental Health Worker Baennan seeking mental health treatment for distress that he had experienced in connection with the assault. Mental Health Worker Baennan informed Pena that she could not assist him regarding his concerns and that he should make

custody staff aware of his safety concerns and request to be place in protective custody. Pena does not allege that he suffered any harm whatsoever resulting from Worker Baennan's conduct. Indeed, within two weeks of the assault, prison officials transferred Pena to Walker. Thus, the failure to protect claim against Mental Health Worker Baennan is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

However, after his transfer to MacDougall-Walker, a mental health staff member diagnosed Pena as suffering from post-traumatic stress disorder and provided him with treatment for his symptoms. Construing his claim against Worker Baennan as also including a Fourteenth Amendment claim of deliberate indifference to mental health needs, the court applies the standard set forth in *Darnell* to Pena's claim. *See id.* at 35; *Walker v. Wright*, No. 3:17-CV-425 (JCH), 2018 WL 2225009, at *5 (D. Conn. May 15, 2018) ("District courts in this Circuit have ... applied *Darnell's* objective "*mens rea*" prong to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment" because "a footnote in *Darnell* indicate[d] that 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment'") (quoting *Darnell*, 849 F.3d at 33 n.9)).

Construing the allegations against Mental Health Worker Baennan liberally, the court concludes that Pena has stated a plausible claim that Mental Health Worker Baennan either intentionally denied Pena mental health treatment for a serious mental health need or recklessly failed to act with reasonable care to mitigate the risk that denying treatment would pose to Pena's mental health. The Fourteenth Amendment denial of mental health treatment claim will proceed against Mental Health Worker Baennan in her individual capacity.

**First Amendment Retaliation Claim**

Pena alleges that Captain Kelly informed him on November 26, 2018 that he would be transferred to MacDougall-Walker. Pena questioned Captain Kelly about the transfer to a more restrictive Security Risk Group facility. Captain Kelly indicated Pena was being transferred due to Pena's complaints and attempts to get his friends into trouble. Although Pena "feels" that Counselor Supervisor Aldi was also involved in the decision to transfer him, this allegation is conclusory. *See* Compl. at 9 ¶ 41. Thus, the court construes the allegations regarding Pena's improper transfer as against Captain Kelly only.

To state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (internal quotation marks and citation omitted).

Pena states that he filed inmate requests and grievances seeking to be moved from the Security Risk Group unit because he feared for his safety. The filing of an inmate request or grievance is protected activity. *See id.* at 294 ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §

1983.") (internal quotation marks and citations omitted). Pena has alleged that Captain Kelly was involved in the decision to transfer him to MacDougall-Walker, a facility with a more restrictive Security Risk Group program, and that the decision to transfer him was made because of the requests and grievances that he filed about his confinement. These allegations state a plausible First Amendment retaliation claim against Captain Kelly. That claim will proceed against Captain Kelly in his individual capacity.

**State Law Claims**

Pena asserts claims of intentional infliction of emotional distress against all defendants, a claim of negligence against Counselor Supervisor Aldi, Unit Manager Tammaro, Captain Kelly and Mental Health Worker Baennan. a claim of false imprisonment against Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly and a claim of assault and battery against Lieutenant Bragdon, Officers Nichols, John Doe #1 and John Doe #2. The court will exercise supplemental jurisdiction over (a) the intentional infliction of emotional distress claim to the extent that the claim arises out of the same facts that support the Fourteenth Amendment excessive force, failure to protect and denial of mental health treatment claims and (b) the assault and battery claim to the extent that the claim arises out of the same facts that support the Fourteenth Amendment excessive force claim.

**Negligence**

Connecticut law provides, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4–165. Connecticut courts note that "wanton, reckless, or malicious" acts go beyond gross negligence, and denote "highly

15

unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379, 802 A.2d 814, 819 (2002) (internal quotation marks and citation omitted). Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003).[3]

Accordingly, the negligence claim against Counselor Supervisor Aldi, Unit Manager Tammaro, Captain Kelly and Mental Health Worker Baennan in their individual capacities is barred by statutory immunity under Conn. Gen. Stat. § 4-165 and is dismissed. *See* 28 U.S.C. § 1915A(b)(2).

To the extent that Pena asserts a claim of negligence against Counselor Supervisor Aldi, Unit Manager Tammaro, Captain Kelly and Mental Health Worker Baennan in their official capacities, the request for monetary damages is barred by the doctrine of sovereign immunity. "The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty." *Hultman v. Blumenthal*, 67 Conn. App. 613, 620, 787 A.2d 666, 672, *cert. denied*, 259 Conn. 929, 793 A.2d 253 (2002). This immunity is applicable to both lawsuits seeking monetary damages against a state as well as to lawsuits seeking monetary damages against a state official in his or her official capacity. *See Miller*, 265 Conn. at 313, 828 A.2d at 558 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation marks and citation

---

[3] In addition, "[a]ny person having a complaint for such damage or injury" must "present ... [the] claim against the state" to the State Claims Commissioner who may authorize an action against the state or a state official. Conn. Gen. Stat. §§ 4-160(a), 4-165(a). When filing a lawsuit, the plaintiff must allege that he or she sought "authorization and the date on which it was granted." Conn. Gen. Stat. § 4-160(c). Pena has not asserted that he filed a claim with the Connecticut Claims Commissioner or that he received the required authorization to file suit against the State and its officials.

omitted). There is no allegation that the defendants in their official capacities waived their sovereign immunity to be sued as to any negligence claims for monetary damages. Accordingly, the negligence claim against Counselor Supervisor Aldi, Unit Manager Tammaro, Captain Kelly and Mental Health Worker Baennan in their official capacities is dismissed as barred by sovereign immunity. *See* 28 U.S.C. § 1915A(b)(2).

### False Imprisonment

Pena asserts a claim of false imprisonment against Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly. He provides no facts in support of this claim.

Connecticut law defines "false arrest" or "false imprisonment" as "the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)). As of January 4, 2018, Pena was confined at Corrigan as a pretrial detainee pursuant to this arrest by Waterbury Police Officers on the charge of sexual assault in the second degree. He subsequently pleaded guilty to this charge and a judge sentenced him to five years of imprisonment. Because Pena was already held when any of the acts complained of occurred, no named defendant could have deprived Pena of his liberty. *See Walker v. Sankhi*, 494 F. App'x. 140, 143 (2d Cir. 2012) (summary order) ("[E]ven if he could overcome the presumption of probable cause, [plaintiff] could not have suffered a deprivation of liberty as a result of the Bellamy burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge....") (citation omitted); *Leniart v. Bundy*, 2011 WL 4452186, at *7 (D. Conn. Sept. 26, 2011) ("A plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time

17

of his arrest and prosecution, he already is in custody on other charges, because there is no deprivation of liberty interests."); *Goncalves v. Reynolds*, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) ("[A]t the time that these events occurred, plaintiff was already being detained pursuant to the earlier ... charges, and based upon his prior convictions.... Since plaintiff would have been in custody anyway, he cannot state a claim for false arrest."). Accordingly, Pena has failed to state a false imprisonment claim under state law. Pena's false imprisonment claim is dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

**ORDERS**

The court enters the following orders:

**(1)** The claims for money damages against the defendants in their official capacities for violations of the United States Constitution and the state law negligence claim against the defendants in their individual and official capacities are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Fifth Amendment due process claim against all defendants, the Fourteenth Amendment failure to protect claim against Worker Baennan, and the state law claim for false imprisonment are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Fourteenth Amendment excessive force claim will proceed against Lieutenant Bragdon, Officers Nichols, John Doe #1 and John Doe #2. The Fourteenth Amendment failure to protect claim will proceed against Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly in their individual capacities and against Supervisor Aldi in his official capacity. The Fourteenth Amendment deliberate indifference to mental health needs claim will proceed against Worker Baennan in her individual capacity. The First Amendment retaliation claim will proceed against Captain Kelly in his individual capacity.

The court notifies the plaintiff that the Clerk **cannot** serve the complaint on the two John Doe defendants because he has not provided the first and last names of these defendants. The plaintiff will have ninety (90) days from the date of this order to conduct discovery and file a notice identifying each Doe defendant by his first and his last name. Pursuant to Rule 4(m), Fed. R. Civ.P., the court will dismiss the case without further notice as to any Doe defendant that the plaintiff does not sufficiently identify by first and last name within the time specified.

**(2)** **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Counselor Supervisor Aldi, Unit Manager Tammaro, Captain Kelly, Lieutenant Bragdon, Correctional Officers Nichols and Mental Health Worker J. Baennan and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Within twenty-one (21) days of this Order, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and this order on Counselor Supervisor Aldi in his official capacity by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

**(4)** Defendants Aldi, Tammaro, Kelly, Bragdon, Nichols and. Baennan shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any additional defenses permitted by the Federal Rules.

**(5)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order.  Discovery requests need not be filed with the court.

**(6)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(7)** **The Clerk shall** send a courtesy copy of the complaint and this order to the Pena and to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit**.**

SO ORDERED at Bridgeport, Connecticut this 21st day of May, 2019.

                                                     _/s/_____
                                                     Kari A. Dooley
                                                   United States District Judge