* United States District Courts *

* District of Connecticut *

James Peña #378668

V.

Aldi ET AL

Case No: 3:19-cv-00124(KAD)

Date: 2-13-20

* Plaintiff Motion For Partial Summary *

* Judgment *

Pursuant to Rule 56, Fed.R.Civ.P. Plaintiff James Peña requests this court to grant him summary Judgment as to the liability of defendants Lt Bragdon and officers Nichols for the excessive use of force, and for the failure to Protect on Aldi, Tammaro and Captin Kelly. The reasons therefer are set forth in the Plaintiff declaration and brief in support of this motion.

Date: 2-13-20

James Peña #378668

James Peña

287 Bilton Rd P.O Box 665

Somers CT 06071

Northern C.I

SCANNED at
and Emailed
2/20/2020 by ____ . 39 pages
C..3        initials    No.

James Peña 378668     | Case No: 3:19 - CV - 00124 - (KAD)

V            | Date 02 - 13 - 20

Aidi Et AL        |

* Declaration in support of *

* Plaintiff Motion for Partial summary Judgment *

James Peña State: The following Lines 1-11 supports Failure to Protect claim:

1. I am the Plaintiff in this case, The Complaint State that I was subject to excessive use of force by Prison Staff, I was subject to A failure to Protect from Prison Staff : Deliberate indifference to my Mental Health needs, and And A First Amendment Retaliation against Kelly. I submit this declaration in support of My Partial summary Judgment on my claims of excessive use of force and Failure to Protect.

2. I am a inmate currentily houeed at Northern c.l, but on 10/13/17 I was Housed at New Haven Whalley an Correctional County, in whitch I informed John Aldi of My Illegal Placement for s.R.G, and the fact that one of My criminal charges are Sexual Assoult and threw Request form. See Exhibit A.

3. No Response was Sent to Me, and at that Point of My incareration I was unfimilar with the Grievence Process.

4. On 1-4-18 : I was Housed at Corrigan c.l SRG block, in Which I tryied Mutipal attemps to Warn and inform Tammaro; Aldi of My Situation and Request for P.C. See Exhibit 2 Request foreward To UnitManager.

5. As Unit Manager Tammaro being the Unit Manager of the S.R.G Block, and Captin Kelly taking over ~~J-P~~ for Tammaro. According to the Security Risk Groups Directive, 6.14, Page 3 of 10 § 5

It states that the unit Manager Shall report and monitor organizational structure, by laws ect See Exhibit#3, Section 5

6. By you being the unit manager, you should be aware that the 3 Major Rules of any Security Risk group, reguardless of what designation you are, is all the Same 1) No snitches, 2) No Homo, 3) No Rapist.

7. After failing Mutipal attemps of Reavestiong P.C., warning the Co's, Lt., unit manager of possible threats which was all ignored, or not taken seriously. On June 15 2018, Plaintiff "Brother in Law" Jordan Smith was housed at Bridge Port C.C. seg, and was issued a DR for sending Me a Message informing Me "James Peña" that the Bloods had a "hit" on me due to My case. Jordan Smith suggested that i should Sign up for Protective custody, the current S.R.G Coordinator disregarded Jordan Smith warning and Stated that his warning was "relaying gang related messages". See Exhibit 4 which is Complaint from Jordan smith Law suit, Lines 162-168 Which was type up by his attorney.

8. After recieving Jordan Smith #324287 warning on June-29-18, Ive spoken to the current Unit Manager "At the time" as well as wrote him serval reavest forms of My Presence in S.R.G, and Me being label a Plate due to My Charge. Which He Never took sirous See Exbit 5.

9. According to the Protective Management Administrative Directive 9.9, Page 1 and 2 Secection 4 A-E Threat Notification, states Protective Measures for an inmate shall be considered, when it is determined a substantail risk of Serious harm to the inmate May exist when (A) information recieved during intake at any Department (B) information recieve from and internal or external source "Which i informed them Mutipal times, and Jordan Smith did as well"

(C) A Situation which occurs that would normally result in a substantial risk "By me accepting A Plea bargin, Even befor that by me having A Sexual Assaulted charge, I became subject to sirous harm by being label a "Plate"

(D) The Professional Judgment or knowledge of a Department employee "By Tammaro, Aldi, Kelly working the S.R.G. with a Position of Authority either by being the coordinator, unit manager, captin they shall fimilarize their self with all risk group By laws Creed ect, 1) Major by law or Rule being "No Rapist".

(E) Circumstance reguarding the nature of the Offense. 4 out of 5 of the Mention Category Pertain Me, and I Even Requested it, and No Protective Measure were taken. See Exhibit 6 and 7. Page 1 and two section 4A - E of the 9.9.

(10) Lines 2-9 of this Declaration Supports Plausible Fourthteen Amendment failure to Protect claim against Counselor Supervisor Addi, unit Manager Tammaro, and Captin Kelly, due to my Mutipal atteups of warninys, and Requesting P.C, as well as Exhibit A-7 I Submitted attached. Line 5, Plaintiff Request and informed the Court, that Jordan Smith #324287 Who is current housed at walker C.I as my witness to Confirm my Statement Writting on Line 5.

(11) Exhibits 8, 9, 10 are Photographs that result from a brutal attack, on 11/14/18 that Stemmed from A "Blood Member" taking a "hit" that Was Placed on me due to my Charges. A attack that could of been Prevented. See Exhibits 8,9,10.

The following Lines 12-24 Supports ~~excessive use of~~ Excessive use of force:

(12) Just as I Mentioned in my Complaint, not only Was I assaulted and/or a Victem of a "Hit" being Carried out on 11/14/18 on 2nd shift E Pod Day Room, I Was also assaulted by Correctional offical for no

Reason.

(13) See Exhibit 11, A Declaration submitted by a witness, who Witness the injusticness Conducted by the officers after the fight, and L.T.

(14) See Exhibit 12, A reciet of the over head SKY camera "V.P 18 1284" Possible Catching the assaulted Conducted by the Police after i was Restrained already.

(15) Upon Being Phyicially Punched Mutipal times by C.O. Nicolas, Officer Bodin a C.O who Was involed in seperating the fight and then applieng restraints ¿ Securing Me. Stated on two seperated incident reports, that he was able to "Seperate the inmates, Secured the inmate (Me) to the ground and then applied wrist restraints" without Menting or useing the words "resisting or Chemical Agent" See Exhibit #14 and 13.

(16) Exhibit 13 ¿ 14 completeily contradicts, C.O. nichols reason for StricKen Me, and Lt Bragdon Reason for Pepper spraying Me. the officer clearily State he "Seperated, Secured and applied wrist restraint" Without mention any issuesor any resisting, or any O.c. sprey. It is clear that officer Bodin Secured My Right hand, (Exhibit 13,14) ~~being~~ and Wrist restraint were applied ~~upon~~ With out incident prior to being relieve ~~from~~ by offical Ne Meth.

(17) Exhibit 15. Clearily colaborate Exhibit 13 and 14, Stated Prior to being relieved by officer Nichols, Officer Conroy "applied a Wrist lock technique to MY left hand and moved inmate Peña to the floor and Secured his left side" Without mentioning any resisting, or any reason for OC sprey. See Exhibit 15, officer Conroy imput.

(18) Exhibit 16, Officer Nemeth States Prior to relieving Bodin, He assisted with Securing inmate Peña legs to the dayroom floor as other Staff Members Completed the application of wrist

restraints. Without Mentioning any time that "I resisted, ~~which~~ or had any reason to get Mace. Exhibit 16 Colaborates with Exhibits 13, 14, 15 Statements, Justifing there was no Valid reason to Mace Me, or No Valid reason for officer Nichols to Punch Me in My Ribs Mutiple times. See ~~Exhibit~~ Exhibit 16.

(19) Exhibit 17, Lt Pearson Attemp to Justifide Lt Bragdon Reason for Malicously spreying Me, by clearily Lieing on a Incident report when he stated "Upon arrival Chemical Agent has been administered and i observed the two inmates actively fighting While staff were Separating and stabilizing them."

(20) i Want to bring to the attention of the Judge. Exhibit 17, Lt Pearson Justifide Lt Bragdon "Reason for spreying me is because when he arrival We ~~were~~ (inmate aganist inmate) were still active fighting". See Exhibit 17. Exhibit 17 is Not creiditable, and it doesn't go's with Lt Bragdon Reason's for spreying me Which is a Sign that he lied to cover up for his fellow L.T. wrong doing. See Exhibit 18.

(21) Exhibit 18, Lt Bragdon incident Reports State a total different reason, and doesn't Colaberate's with L.T Pearson reason and testimony Exhibit 17, and doesn't colaberates with ony of the other officers testimony Exhibit 13, 14, 15, 16. He States that i Wasn't allowing staff to Place Me in wrist restraint Which is his reason for spraying. See Exhibit 18

(22) According to Exhibits 13, 14, 15, 16, Wrist restraint were applied without the use of O.C., i Was Secured without mentioned the use of O.C Sprey.

(23) According to Exhibit 17, Lt Pearson States that I was Still activeily fighting which is the reason Lt Bragdon Sprey me.

(24) According to Exhibit 18, and (see Exhibit 19 Nichols use of force Report) the reason I got Peper Sprey was because I was resisting the wrist restraint.

(25) I written Reavest form to the Dep warden complaining about 11/28/18 excessive use of force conducted by officer nrchols Punching me in my Ribs and calling me a "Rapist", and L.T Bragdon allowing Nichols to attack me, and add towards the excessive use of force by Maliousily Spreying me and saying "Shut up Rapist" and other vorger Jestures. See Exhibit 19

(26) Once the Reavest form wasn't responded to in 15 business days, I then Submitted a Grievence on 12-20-18, against the Reavest form that wasn't responded to, which was Maliousily Rejected Cause they Stated I past the 30 calendar days. See Exhibit 20

(27) A Grievence that is Rejected is not Similar to A Grievence that is denied. You Rejected my Grievence for bogus reason, cause according to the direct, I got 15 Business day to responded to my Reavest, and once my Reavest wasnt Respond I wrote a grievence about it which was rejected. See Exhibit 20.

(28) I was then place on Grievence Restriction on Jan 23 which ended on July 23 2019. See Exhibit 21

(29) Two other Grievences that were rejected for "time limited" see Exhibit 22, 23. But noticed that Exhibit 22 State Appeel to L2 But the Exhibit 21 and 23 State D/A "Dont appeal." All Grievence I try to handle Prior to being on Grievence Restriction, which were rejected (Not accepted) Due to the Bougus Reason "time limited".

(30) For the reasons stated in the brief submitted with this Motion, these undisputed fact establish that defendants Aldi, Tammaro and Captin Kelly subjected me to failure Protect by ignoring my critical warning and requests form.

(31) The undisputed fact will also establish that defendants LT Bragdon and C.O Nichols subjected me to excessive use of force. I am entitled to Summary Judgment on my ~~failure~~ failure to Protect Claim, and excessive use of force claim. Pursuant to 28 U.S.C § 1746, I declare under penalty of pejury that the foregoing is true and Correct.

Date 2-14-20

James Pena

James Pena #378008

287 Bilton Rd P.O. Box 665

Somers Ct 06071

Northern C.I

James Peña #375668      |    Case No: 3:19-cv-00124-(KAD)

v                      |    02-14-20

Aldi, ET AL           |

## * Statement of unDisputed Facts *

- Pursuant to Local Rule of this Courts Civil Rights, the Plaintiff Submitts the following list of undisputed fact that entitle him to Partial Summary Judgement on his Failure to Protect Claim against Aldi, Tammaro and Kelly.

- The list of undisputed fact that will entitle him to Partial summary Judgement on his excessive use of force against LT Braydor and C O Nichols.

### Failure to Protect claim

1) The Plaintiff enter the Department of Corrections as a Pre-trail Detainee on 10-6-17, with one of the pending charges being Sexual Assault$^{2nd}$.

2) John Aldi was the S.R.G. Coordinator at the Mention time.

3) Tammaro was the Unit Manger for Both S.R.G. Units (B & E) Housed at Corrigan Correctional.

4) Upon being transfer to S.R.G. Black (without a hearing), I verbal informed Tammaro and Aldi, bout my current criminal charges, and the Safty of my well being due to threats.

5) I also wrote Mutipel Request form informing Tammaro and Aldi, that i was label "Plate" Due to my criminal charge.

6) My wife Markesha Dennis even attemp and called servel time upon her Knowledge of Serious Event.

7) Captin Kelly took over for Tammaro around, IDk.

8) The 6.14 Directive, "S.R.G" States that the Unit Manager and Coordinator Must be aware and Know the Rules, and bylaws ect of All S.R.G Groups.

(9) The three Major Rules on any gang, Blood, crip, King, Solid, AB ect are ▨ Mostly the Same, No Snitches, No GAYs, No Rapist. Its More Rules to that, but those the three Major Rules. You can even type that up on the Internet and Search it,

(10) Jordan Smith #324287 informed the Current unit Manager of a "Blood" "Hit" Place on Me, due to My Criminal Charges, and Suggested that I Should Sign up for P.C. With h.M.

(11) See Exhibit 1.A, Shows that Partial Reason for Jordan smith Getting removed out of P.C. is Cause He Sent the Message threw His Sister (My Wife) about the "Hit" Place on Me, and Suggested that i Go to P.C.

(12) In accordance to the Protective Manager Directive 9.9, 4 out of the five Category Pertained to Me which at the end it Required Protective Measures.

(13) I wrote a Request form to Captin Kelly Which he ignored.

(14) The Plaintiff was altermintily assault, snuck, and struck by a "blood Members" due to the hit that was Place on Me.

excessive use of force

(15) DeyKevious Russaw #421625 a inmate witness who witness the injustice ness Conducted by C.O Nichols and LT Bragdon.

(16) The Ver Print Cormera in the Ski of the Day room would also Capture the injustice ness Conducted by C.O. Nichols ¿ LT Bragdon.

(17) Serval different C.O. ~~constatad~~ contradicted LT Bragdon Reason for spreying Me,

(18) LT Pearson Lied in a attempt to cover and Justifide LT Bragdon Reason for spreying Me.

02-14-20     James Pena     287 Bilton Rd P.O. Box 665

James Pena  # 378665     Somers CT 06071 Northern c.I

James Peña #345668                     Case No: 3:19-CV-124 (KAD)

v.                                     2-14-20

Aldi, ET AL

\* Brief in Support of Plaintiff \*

\* Motion for Partial summary Judgement \*

This is a § 1983 action filed by a Prisoner at a Connecticut D.O.C. Seeking damages, declaratory relief, injunctive relief based on excessive use of force, failure to Protect, Deliberate indifference to My Mental health need, A 1st Amendment Retaliation Claim. In this Motion the Plaintiff seeks Summary Judgement on Partial of his claims and allow the trial to decide the outcome of the remainder of My Claims. Plaintiff seeks summary Judgment on his failure to Protect claim against Aldi, Tammaro, Kelly, Seeks Summary Judgment on his excessive use of force claims against LT Bragdon and C.O Nichols.

## Statement of facts

As set forth in the accompanying declaration of the plaintiff, James Peña was subjected to a failure to Protect by Unit manager Tammaro, Captin Kelly and S.R.G Coordinator John Aldi when they deliberatily ignored all ~~obscene~~ Warning, over look and/or turned a blind eye to a Potential threat and act of Violence. Outside ~~sources~~ sources and internal Sources as well as myself alerted, warned all three defendant of a threat and even Request P.C., which was ignored. On 11/14/18, Plaintiff was struck and seriosisly assaulted by a "Blood Member" for carrying out a "hit" that was Place on me due to My criminal charges. On the same day Mention, I was subjected to a Excessive Use of force conducted by C.O Nichols when he continualily Punch Me Mutipal times in My ribs Calling Me a "rapist" while i was handcuff. During the time When C.O Nichols was Punching Me, LT ~~Bradgon~~ Bragdon

Who Witness the Assault conducted by C.O. Nichols fail to interveen, and instead of using his Position of Authority to Right a Wrong that was being done by C.O Nichols, LT Bragdon added his own attemp, and Maliicously Pepper spray in My ~~face~~, talking "talking about stop Bitchen Ripper".

## ARGUMENT

### Point 1

The Defendants subjected Plaintiff to a failure to Protect. ~~the~~ Defendant's Counsuelor Supervisor Aidi, unit Manager Tammaro, and Captin Kelly, Were all in a Position of Power over The S.R.G unit/Program The ~~Probably~~ Plaintiff Was subjected to on and before the Day of the incident. See Farmer v. Brennan, 511 U.S at 845; Riley v. Jeffes. 777 F2d 143 147 (3d cir 1985) By the nature of My Criminal Charges, I Was exposed to Serious harM being housed a SRG Block. See Farmer V Brennan, 511 US 825 (1994) / Wilson V. Seiter, 501 US 294 (1991) Barney V. Pulsipher 143 F3d 1299 1311 (10th cir 1998)

B. The Defendant Must have Knowledge of all "By laws, Rules, ect" of all S.R.G. See Directive 6.14 "S.R.G". Wilson V. Seiter 501 U.S. 294 (1991) Defendants Knowledge with the S.R.G. Groups, and Program, along with there experience to the S.R.G enviroment leads Me to believe that they Know i Was in danger. See Helling V McKinney, 509 U.S. 25,33 (1993) Sciner V. engelke. 943 F2d 921 924 (8th Cir 1981). ~~Mcsinnef~~

C. Ignoring Plaintiff Request for P.C.

I Reavested P.C. Mutiple times, My Wife called in out of concern of Me and i was constantly ignored. Ruiz v Johnson 37 F. Supp 2d 855, 929 (S.D. Tex 1999), Farmer V. Brennan 511 U.S. at 828, 834-47, 114 S Ct. 1970 (1994) Goka V. Bobbitt, 862 F.2d 646, 651 (7th cir 1998)

## ARGUMENT

### Point II

**The Defendant Subjected Plaintiff to excessive Use of force**

The Defendants, L.T. Brogdon, and C.O. Nichols applied excessive use of force on the day of 14th November 2018, 2nd shift at E Pod in Corrigan ci SRG Unit, while Responding to a Code "blue" Fight, Plaintiff was a victem of a "hit" that was ordered and carried out by a "blood" Member due to Plaintiff criminal charges. The assailent yelled out On Camera " The reason for Me assaulted him is because he's a Ripper". Once C.O. Nichols heard that, he then Punch Me Mutipal times in the Ribs while i was handcuff. Brown V. Lippard 472 F.2d 384 (5th Cir 2006) ; See Estate of Davis by ostenfeld V. Delo 115 F.3d 1388 (8th Cir 1997). Hudson v. McMillian 503 U.S. (1992). While C.O Nichols was Punching Me, he was telling Me " Shut the f**K up Rapist". Montero V. Crusie, 153 F. supp 368, 377 (S.D. NY 2001) v.s. V. Donnelly, 370 F.3d 87 (1st Cir 2004)

**B. L.T. Brogdon excessive use of force by Pepper spraying Me**

at No time was i Resisting, according to Majority of the C.O.S i Was already Secured and wrist restraint were applied. Johnson V. Blauket, 453 F.3d 1108, 1113 (6th Cir 2006). I Wasn't Resisting and yet You called Me so i could turned My face to you and spray Me, then laught, and told Me " Stop B***ching Ripper". Foulk V. Charrier, 262 F.3d 687, 701-02 (8th Cir 2001).

### Conclusion

For the foregoing reasons, the court should grant Partial summary judgment on liability to the Plaintiff on his failure to Protect Claim and his excessive use of force claim. The amount of damages due to the Plaintiff must be determined at trial. Patterson V. Coughlin, 905, F.20 564, 570 (2th Cir 1990)

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

02-14-20

Respectfully submitted

James Peña #378668

James Peña

287 Bilton Rd PO BOX 665

Somers CT 06071

Northern C.I.

C.C.

Handwritten Copy  James Pena  Exhibit A

Fri
10/13/17
5:50 PM

C.C. John Aldi
James Pena N 9601
REV 1/31/09

Master File

# Inmate Request Form
## Connecticut Department of Correction

Inmate name: James Pena

Inmate number: 378668

Facility/Unit: New Haven C.C.

Housing unit: FC-10

Date: 10/13/17

Submitted to: John Aldi

Request: Why did they put me in Seg for, I been home for 3 years, I am not Affiliated with nothing and i Also have a sex charge, they put me directly in Seg without a ticket, No hearing No nothing and designated me bload without No proof.

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name):

Title:

Action taken and/or response:

continue on back if necessary

Staff signature:

Date:




# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: James Peña

Inmate number: 378448

Facility/Unit: Corrigan

Housing unit: B-119

Date: 12-17-17

Submitted to: L.T. TAMARO

Request: I know we dicuss this But there was certain things that didn't make scense to me First you said "That if you come in Black P stone A from the world they cannot affiliate you But Doc recogize Black P stone T. Rodger as Blood" That Dont make scense. First of all T. Rodgers Didn't start Blood Nor Did he start Black P stone, All Trodger DID was Turn a stone head blood, Jungle stone Blood. But wat that Gotta Do with yhm Affiliation me with Black P Stone Nation. If they Been Remove from Distrutive Group and yall got Saying Got Clear proff in Black P stone wats the porpose of me Being here. im not bang ing anything yall Do a five Program that Dont even take place Since ive been here I havent seen not one five Phase program. Help Me understand. I Also have a Sex Charge Which Makes Me a Plate you know the Rules and Regulations to these Gangs, its best if yall Put Me in P.C. to ensure my safty Please Thank you

**continue on back if necessary**

Previous action taken:

**continue on back if necessary**

Acted on by (print name): MuMMAw

Title: LT

Action taken and/or response:
I'm honestly exhausted talking about it. I think you should write a regust to CS ACDi for more answers. Thanks and have a sparkling day!

**continue on back if necessary**

Staff signature: Mumm

Date: 1-16-18


Exhibit 3

C.   Notification of Designated Security Risk Groups. A list of designated Security Risk Groups shall be posted in inmate housing units and/or common areas within the facility. The lists shall be updated as modifications occur.



5.   Group Monitoring. The Unit Administrator or designee shall manage the ongoing monitoring and reporting of all Security Risk Groups, Disruptive Groups and Watch Groups activities to the Director of Security or designee. Such monitoring and reporting shall include organizational structure, chain of command, bylaws, creed, names and titles of individual inmates connected with Security Risk Groups and identifying colors, tattoos, hand signals or other common identifiers. Monitoring shall include information on the relationships of Security Risk Group Members both within the unit and the Department as well as reports on all factors listed in Section 4(A) of this Directive.

6.   Security Risk Group Member Designation Process. An inmate's Security Risk Group activity shall be monitored utilizing form CN 61408, Internal Security Criteria for SRG Determination. Form CN 61408, Internal Security Criteria for SRG Determination (whether blank or complete) shall be exempt from disclosure. Inmates shall be assessed and considered for designation based on the following:

A.   Security Risk Group Member. An inmate shall have a minimum of five (5) points in accordance with CN 61408, Internal Security Criteria for SRG Determination AND meet the requirements of Section 7(A) of this Directive.

B.   Security Risk Group Member Phase 1 Placement. An inmate shall have a minimum of ten (10) points in accordance with CN61408, Internal Security Criteria for SRG Determination.
                         --OR--
An inmate currently designated as a Security Risk Group Member and is found guilty of a Class A Disciplinary Report in accordance with section 11(C) of this Directive and Administrative Directive 9.5, Code of Penal Discipline.

C .   SRG Review Committee for Initial Phase Placement. The SRG Review Committee shall consist of the following members:

1.   Security Division SRG Unit;
2.   Unit Manager (if applicable);
3.   Classification Counselor Supervisor;
4.   Unit Counselor;
5.   Facility Intelligence Coordinator;
6.   Unit Correctional Treatment Officer (if applicable)

7.   Designation as a Security Risk Group Member. An inmate shall be designated as a Security Risk Group Member under the following conditions:

A.   When there is reason to believe that an inmate is a Security Risk Group Member, the Unit Administrator or designee shall initiate the process for designation of an inmate as a Security Risk Group Member by following the notice and hearing procedures set forth in Administrative Directive 9.5, Code of Penal Discipline and Section 6 of this Directive, except that form CN 61401, Security Risk Group

Exhibit 4   Front
And
Back

*Privileged & Confidential
Attorney Work Product*

inadequate air-conditioning or ventilation and closed window that was inoperable, while other inmates had open windows, during record-breaking summer heatwaves; access to only three (3) showers each week in a filthy and un-sanitized shower where Plaintiff was forced to share a single pair of shower slippers with 11 or more inmates; recycled and obviously unclean underclothes; no recreation; and being forced to eat all meals within a filthy and odor-filled cell.

161.    On or about June 15, 2018, Plaintiff received a DR informing him, for the first time, of the reason he had been kept in Bridgeport CC Seg since June 5, 2018.

162.    The June 15, 2018 DR was for "Security Risk Group Affiliation" and "Security Tampering" based on a conversation Plaintiff had with fellow inmate, James Peña ("Inmate Peña"), via a third-party and documents in Plaintiff's possession that were allegedly gang-related.

163.    At that time, Inmate Peña, who is Plaintiff's legal brother-in-law, was housed in an SRG Unit. Like Plaintiff, Inmate Peña is not a member of the Bloods but is, in fact, affiliated with BPS.

164.    During their conversation, Plaintiff warned Inmate Peña that another inmate had advised Plaintiff that the Bloods had a "hit" out on Inmate Peña because Inmate Peña had recently accepted a plea bargain on a sexual assault charge and was now considered "convicted of sexual assault."

165.    Any SRG Unit inmate convicted of sexual assault is known throughout the SRG Unit as being at serious risk of being subjected to retribution from other SRG members.

166.    Accordingly, Plaintiff advised his brother-in-law, Inmate Peña, that he should consider requesting a transfer to the PC Unit in order to ensure his safety.

Exhibit 5

## Inmate Request Form
### Connecticut Department of Correction

CN 9601
REV 1/31/09

Inmate name: James Ponce

Inmate number: 378468

Facility/Unit: ~~Corrigan~~ Corrigan

Housing unit: E-Pod-111

Date: 06-29-18

Submitted to: CPT/Unit-Manager Kelly

Request: im Written Because my proasence in S.R.G E-Pod is Risking my Life and my phisicall being. my current criminal Charges (S.A. 2nd) is putting my life at Risk, While continuing my Presences in this block. As you may already Know you cant be in a Gang Block with a Sexual Assault 2nd. Although Nothing happen beside Stick Jesture throw the doors of other inmates. other inmates and certain C.O. See this Charge, and think the worst. To Gang members I Would Be label "Plate", To the "Bloods" Which is What D.O.C. has me label due to my Prior incarceration, I would be Consider "Making them look bad". So I Would like to Be Remove form S.R.G. and Place in P.C. to Ressolve this matter Before anything happen to harm my life. Please and thank you

continue on back if necessary

Previous action taken:

continue on back if necessary

Acted on by (print name):

Title:

Action taken and/or response:

continue on back if necessary

37

Staff signature:

Date:



| State of Connecticut<br>Department of Correction | Directive Number<br>9.9 | Effective Date<br>4/29/15 | Page 1 of 11 |
|---|---|---|---|
| ADMINISTRATIVE<br>DIRECTIVE | Supersedes<br>Protective Management, dated 12/15/2006 | | |
| Approved By<br><br>Commissioner Scott Semple | Title<br><br>Protective Management | | |

1. <u>Policy</u>. The Department of Correction shall provide Protective Custody housing for inmates who require protection from other inmates in order to reduce any substantial risk to their personal safety when no other reasonable alternative is available.

2. <u>Authority and Reference</u>.

   A. Connecticut General Statutes, Section 18-81.
   B. Wilkinson v. Austin, 125 S.Ct.2384 (2005).
   C. Stipulation for Judgment, Mamudovski v. Meachum, Docket# 3:93CV00555 (DJS), (D.Conn. 1997).
   D. American Correctional Association, Standards for Administration of Correctional Agencies, Second Edition, April 1993, Standard 2-CO-3C-01.
   E. American Correctional Association, Standards for Adult Correction Institutions, Fourth Edition, January 2003, Standards 4-4249 through 4-4251, 4-4253, 4-4254, 4-4256 through 4-4258, 4-4261 through 4-4273.
   F. American Correctional Association, Performance-Based Standards for Adult Local Detention Facilities, Fourth Edition, June 2004, Standards 4-ALDF-2A-44, 4-ALDF-2A-46, 4-ALDF-2A-48, 4-ALDF-2A-49, 4-ALDF-2A-51 through 4-ALDF-2A-53 and 4-ALDF-2A-56 through 4-ALDF-2A-66.
   G. Administrative Directives 6.1, Tours and Inspections; 6.2, Facility Post Orders and Logs; 9.2, Offender Classification; 9.3, Admissions, Transfers and Discharges; 9.4, Restrictive Status; and 10.12, Inmate Orientation.

3. <u>Definitions</u>. For the purposes stated herein, the following definitions apply:

   A. <u>Protective Custody Management Review</u>. A review conducted by unit staff under the supervision of the Unit Manager/Supervisor, combining an assessment of both objective and subjective information designed to identify and separate inmates, by housing assignments, who are determined to be more predatory from those more likely to be victimized within and by the Protective Custody population.
   B. <u>Protective Custody Status</u>. A management status, after an investigation has determined that an inmate is at substantial risk of serious harm from other inmates in General Population.
   C. <u>Protective Custody Unit</u>. A designated area which houses an inmate apart from the General Population for the purpose of reducing any substantial risk of serious harm to the inmate.
   D. <u>Separation Profile</u>. A record specifying the need and reason for keeping two (2) or more individuals apart from each other.

4. <u>Threat Notification</u>. Protective measures for an inmate shall be considered, when it is determined a substantial risk of serious harm to the inmate may exist, as a result of:

- 015 -

Exhibit 7

    A.    Information received during intake at any Department facility/unit.

    B.    Information received from an internal or external source.

    C.    A situation which occurs that would normally result in a substantial risk of serious harm to an inmate.

    D.    The professional judgment or knowledge of a Department employee.

    E.    Circumstances regarding the nature of the offense and/or media coverage.

5.   <u>Initial Action and Assessment</u>. The Unit Administrator or designee shall ensure immediate and appropriate action to protect an inmate upon notification of a substantial risk of serious harm to the inmate. An assessment of the threat shall be completed to determine its validity and severity and what protective measures, if any, need to be taken. As part of the initial assessment, a supervisor shall conduct an interview of the threatened inmate and any other person who may have knowledge of, or be involved in the situation, and complete the appropriate sections of CN 9901, Request for Protective Custody in accordance with Section 9 of this Directive. If at any point a supervisor or higher authority determines there is a substantial risk of serious harm to the inmate, the inmate shall be placed on Administrative Detention status, in accordance with Administrative Directive 9.4, Restrictive Status, pending a review for Protective Custody or the implementation of other protective measures.

6.   <u>Determination of Substantial Risk</u>. When a substantial risk of serious harm to an inmate is reasonably determined to be valid, the Unit Administrator or designee shall initiate the following:

    A.    An investigation in accordance with Section 9 of this Directive for possible placement on Protective Custody status.

    B.    Establishment or modification of a Separation Profile as appropriate, to include an RT screen and completion of CN 9902, Separation Profile Entry/Update/Deletion Request.

7.   <u>Counseling</u>. When a threat to an inmate may be resolved informally, the Unit Administrator may authorize counseling for the involved parties to attempt to rectify the conflict. The name of each participant and any pertinent information shall be documented via Incident Report by the staff member conducting the counseling.

8.   <u>Alternative Placements</u>. When it is determined that two or more inmates should not be placed together due to safety reasons, the Unit Administrator may authorize alternative placements for one or more of the inmates. The alternative placements may separate the inmates by job classification or housing unit. An inmate may be recommended for transfer to another facility or out of state as an alternative to a Protective Custody assignment. An alternative placement involving transfer to another facility shall be coordinated through, and subject to the approval of, the Director of Offender Classification and Population Management. An alternative placement involving transfer out of state shall be coordinated and subject to the approval of the Director of Sentence Calculation and Interstate Management.

9.   <u>Placement on Protective Custody</u>. Assignment to Protective Custody shall only be authorized when, after an investigation, the approving authority determines that the inmate is at substantial risk of serious harm and no alternative placement is possible. Assignment to Protective Custody for an inmate shall be at the discretion of the Director of Offender Classification and Population Management or higher authority.



# Photograph Evidence
## Connecticut Department of Correction

CN 6904
REV 01/03/17

☒ Facility/Unit: CRCC | ☐ Parole Office: N/A

Incident Report Number (if applicable):
CRCC-2018-11-052

Photo Number:

1    Of    3

Inmate Name: Pena, James | Inmate Number: #378668

Staff member taking photograph: Officer ███ Hamilton

Brief Description of the photograph: Inmate Face

INSERT one (1) Photograph below:



Supervisor Name: ███ Bragdon | Date: 11/14/2018

Supervisor Signature:

Exhibits #9



# Photograph Evidence
## Connecticut Department of Correction

| | |
|---|---|
| ☒ Facility/Unit: CRCC | ☐ Parole Office: N/A |

| Incident Report Number (if applicable): CRCC-2018-11-052 | Photo Number: 2    Of    3 |
|---|---|

| Inmate Name: Pena, James | Inmate Number: #378668 |
|---|---|

Staff member taking photograph: Officer ▇▇▇ Hamilton

Brief Description of the photograph: Inmate Face (Right)

INSERT one (1) Photograph below:



| Supervisor Name: ▇▇▇ Bragdon | Date: 11/14/2018 |
|---|---|
| Supervisor Signature: | |

Exhibits #10



# Photograph Evidence
## Connecticut Department of Correction

CN 6904
REV 01/03/17

| | |
|---|---|
| ☒ Facility/Unit: CRCC | ☐ Parole Office: N/A |

| Incident Report Number (if applicable): CRCC-2018-11-052 | Photo Number: 3  Of  3 |
|---|---|
| Inmate Name: Pena, James | Inmate Number: #378668 |

Staff member taking photograph: Officer ███████ Hamilton

Brief Description of the photograph: Inmate Face (Left)

INSERT one (1) Photograph below:



| Supervisor Name: ████ Bragdon | Date: 11/14/2018 |
|---|---|
| Supervisor Signature: | |

United States District Court     Exhibit 11

District of Connecticut


James Peña              | CV: 3:19-cv-00124-KAD

    V.                  | Aug-04-2019

Aldi et. AL             |


Declaration of Deykevious "Bama" Russaw #421625


I, Deykevious declare under penalty of perjury that the
Following is true and correct. Executed at Corrigan Norwich
New London Tpke, Uncasville Ct on Aug-04-2019

1) I am over the age of 18 and believe in the obligation of
an oath

2) I have been in carcerated at Corrigan C.I. Since Aug-15-2018
and on november 14, 2018 I was housed At E-pod in cell 208.

3) On November 14, 2018 2nd Shift, I was on the door while
cells 101-112 were at Rec; around 7:00 pm or alittle bit before
I witness inmate Peña on the second Phone Post, and Sat
on the table, were he was Sneakily Hit From the side by
a new Arrived inmate

4) The C.O. took Appromixary 5-10 minutes to respond to
The code, when they Broke the Fight up, I heard the inmate
that was assaulted "Peña" Yell out the reason why I Hit
on Him was Because the C.O. told me he was a "Ripper"

5) After that, it took about Five minutes For the C.O.
to keep the two inmates seporated, out of no where,
I saw one of the C.O.'s lift peña out off of his feet
and Slam him on the Ground

Exhibit # 12



## Contraband/Physical Evidence Tag
## and Chain of Custody
### Connecticut Department of Correction

CN 6901 1/2
REV
06/28/17

| ☑ Facility/Unit ORCI | ☐ Parole Office |
|---|---|

| Unit Tracking Number VP-18-1284 | Incident Report Number 2018-11-052 |

### Classification of Physical Evidence

| ☐ Weapon | ☐ Drug/drug paraphernalia | ☐ Alcohol (commercial or homemade) |
|---|---|---|
| ☐ Clothing | ☐ Cellular/Digital Device | ☐ Miscellaneous property |

☑ Written record, video tape/disc, digital image, photograph or audio recording
☐ Appliance (e.g., television, radio, stereo, recorder, etc.)
☐ Currency (money or other commodity of exchange)
☐ Staff Contraband
☐ Other (describe)

### Evidence to be preserved for possible action as follows:

| ☐ Administrative | ☐ Criminal |
|---|---|

Brief description of item or substance and any identifying mark(s):
3 camera vernt view 1 hr before + After
echo pad code ▓▓▓▓ 11/14/18 7:18pm

Location found/confiscated: vernt

| By (staff name): Bowers 6 | Date: 11/14/18 | Time: 7:18 ☐AM ☑PM |
|---|---|---|

| From (inmate name): Pena / Lexis | Inmate number 378668 / 370816 |
|---|---|

### Chain of custody - physical evidence (signature required)

| Staff from: Bowers | Date: 11/15/18 | Time: 915 ☑AM ☐PM |
|---|---|---|
| Staff to: video evidence | Date: 11/15/18 | Time: 930 ☑AM ☐PM |
| Reason: video preservation | Disposition: | |

| Staff from: | Date: | Time: ☐AM ☐PM |
|---|---|---|
| Staff to: | Date: | Time: ☐AM ☐PM |
| Reason: | Disposition: | |

| Staff from | Date | Time: ☐AM ☐PM |
|---|---|---|
| Staff to: | Date | Time: ☐AM ☐PM |
| Reason: | Disposition: | |

Continue on page 2 for additional entries

- 127 -

Exhibit #14

# Incident Report
## Connecticut Department of Correction

CN 6604
REV 10/01/18

| ☐ Facility/Unit: CRCC | | | ☒ Parole Office/Unit: N/A | |

| Date: 11/14/2018 | Time: 7:18 | ☐ am ☒ pm | Report Number: CRCC-2018-11-052 |

| Incident Class: ☐ 1 ☒ 2 ☐ 3 | Type: E | Incident Location: Echo Pod |

| Prepared By: Bodin, ▓▓▓ | | Title: C/O |

| # | Inmate Name (Last & First) | ID Number | Race | Housing | Status | # | Staff Name (Last & First) | Race | Title | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Pena, James | 378668 | H | E-Pod | S | 1 | Bodin, | W | C/O | RPE |
| 2 | ▓▓▓ | ▓▓▓ | B | E-Pod | S | 2 | Perry, | W | LT | RS |
| 3 | | | | | | 3 | Brayson, | W | LT | RS |
| 4 | | | | | | 4 | Nichols, | B | C/O | RSE |
| 5 | | | | | | 5 | Almont, | W | C/O | RSE |
| 6 | | | | | | 6 | Lantey, | W | C/O | RSE |
| 7 | | | | | | 7 | Hamilton, | B | C/O | RSE |
| | | | | | | 8 | Saafir, | H | C/O | RSE |
| | | | | | | 9 | Smith, | B | C/O | RSE |
| | | | | | | 10 | Melquet, | W | C/O | RSE |
| | | | | | | 11 | gordon, | B | C/O | RSE |
| | | | | | | 12 | | | | |
| | | | | | | 13 | | | | |
| | | | | | | 14 | | | | |

Status Codes: V (Victim), S (Suspect), RPE (Reporting Employee), IW (Inmate Witness), EW (Employee Witness), RSE (Responding Employee), RS (Responding Supervisor)

Race Codes: A (Asian), B (Black), H (Hispanic), N (Native American), W (White), O (Other)

Narrative:

On 11/14/18 at 7:18 pm I Officer Bodin while posted in Echo Pod observed inmates ▓▓▓ and Pena, James #378668 engaged in a physical Altercation during recreation. This officer gave verbal commands to both inmates to stop fighting, both inmates were non-compliant with these verbal directions and continued to fight. This officer then attempted to separate both inmates as they wrestled on the ground, this Officer was then able to separate inmate Pena and secured him to the floor in the Echo pod dayroom. This Officer was then able to secure the inmate in wrist restraints as responding staff assisted ▓▓▓

*(handwritten left margin:)* Didn't Mention when P. spray was USE

*(handwritten left margin:)* Didn't Mention the Part of the Wall.

*(handwritten right margin:)* He also said he restrained me once I was on the ground without use P. spray. I was secure.

| Reporting Employee Signature: *(signature)* | | Title: C/O |
| Report Date: 11/14/2018 | Report Time: 9:00 | ☐ am ☒ pm |

Exhibit #13



## Use of Force Report
### Connecticut Department of Correction

CN 6501
REV 10/01/2018

| Provide responses to all of the following: (If necessary, utilize CN6605, Incident Report- Supplemental, for further details). | | |
|---|---|---|
| Date of Incident: 11/14/18 | Time of Incident: 7:18PM | Incident Report Number: |
| Inmate Name: Pena, James | Inmate Number: 378668 | Location of Incident: Echo Pod |

| | | |
|---|---|---|
| **Purpose for using force** (Check all that apply): | ☐ To Defend Self/Another | ☒ To Maintain Safety/Security/Order |
| | ☐ To Prevent Escape | ☐ Other |
| **Describe in detail purpose of using force:** | Inmate was engaged in a physical altercation. | |
| **Nature of Threat: (Check all that apply)** | ☒ Immediate (actively happening)    ☐ Imminent (about to happen)    ☐ Anticipated (expected to happen) | |
| **Identify highest level of threat:** | ☐ Passive Resistance: (Dead weight or non-compliance to Officer's lawful verbal direction, but offering no actively resistive movement) | ☐ Active Resistance: (Actions such as pushing, pulling, evasive arm movement, flailing, flight, muscle tension, etc. to avoid control. Does not attempt to harm the Officer) |
| | ☒ Assaultive (non-deadly): (Agitated, combative state, physically assaultive actions and/or behavior that poses threat of injury to another (e.g., punching, kicking, clenching of fists, etc.) | ☐ Life Threating/ Serious Bodily Injury: (Actions that may result in death or serious bodily injury) |
| **Describe in detail the nature of the highest threat level:** | The inmate was actively engaged in a physical altercation with another inmate. | |
| **Efforts made to avoid or minimize use of force (Describe in detail):** | This officer gave verbal directions to the inmate to stop fighting. | |
| **Force utilized (Check all that apply):** | ☒ Cooperative Control Holds    ☐ Nerve Compression    ☐ Mechanical restraints | |
| | ☐ Personal Weapon(s) Strikes    ☐ Chemical Agent Deployment    ☐ Impact Weapon | |
| | ☐ Firearm(s)    ☐ Other (Describe): | |
| **Describe in detail progression of force utilized during incident:** | This officer gave verbal directions several times, once this intervention was non effective this officer grabbed the inmate and attempted to separate him while he was wrestling. Once this officer was able to separate the inmates this officer secured the inmate to the ground and then applied wrist restraints. | |
| **Describe in detail outcome of use of force:** | The inmate was secured to the floor and placed in wrist restraints. | |

| | |
|---|---|
| Name (Print): Bodin, ▮▮▮▮ | Title: Correctional Officer |
| Signature: | Date of Report: 11/14/18 |

Exhibit 15



## Use of Force Report
### Connecticut Department of Correction

CN 6501
REV 10/18/2018

| Provide responses to all of the following: *(If necessary, utilize CN6605, Incident Report- Supplemental, for further details).* | | |
|---|---|---|
| Date of Incident: 11/14/18 | Time of Incident: 7:18pm | Incident Report Number: CC CC - 2c./81 - 11 - c*2 |
| Inmate Name: Pena, James | Inmate Number: 378668 | Location of Incident: Echo Pod |

| Purpose for using force: (Check all that apply): | ☐ To Defend Self/Another | | ☒ To Maintain Safety/Security/Order |
|---|---|---|---|
| | ☐ To Prevent Escape | ☐ Inmate Self Harm | ☐ Other (Describe below in detail) |
| Describe in detail purpose of using force: | I applied a wrist lock technique to inmate Pena's left hand in order to gain compliance and secure inmate Pena from the wall to the floor. | | |

| Nature of Threat: (Check all that apply) | ☒ Immediate (actively happening) | ☐ Imminent (about to happen) | ☐ Anticipated (expected to happen) |
|---|---|---|---|

| Identify highest level of threat: | ☐ Passive Resistance: (Dead weight or non-compliance to Officer's lawful verbal direction, but offering no actively resistive movement) | ☒ Active Resistance: (Actions such as pushing, pulling, evasive arm movement, flailing, flight, muscle tension, etc. to avoid control. Does not attempt to harm the Officer) |
|---|---|---|
| | ☐ Assaultive (non-deadly): (Agitated, combative state, physically assaultive actions and/or behavior that poses threat of injury to another (e.g., punching, kicking, clenching of fists, etc.) | ☐ Life Threatening/ Serious Bodily Injury: (Actions that may result in death or serious bodily injury) |
| | ☐ Other (Must describe): | |

| Describe in detail the nature of the highest threat level: | Inmate Pena, James 378668 and inmate ▮▮▮▮▮▮▮ were involved in a physical altercation. |
|---|---|

| Efforts made to avoid or minimize use of force (Describe in detail): | This officer gave multiple loud, clear and concise verbal commands to inmate Pena to stop fighting. |
|---|---|

| Force utilized (Check all that apply): | ☒ Cooperative Control Holds | ☐ Nerve Compression(s) | ☐ Mechanical restraints |
|---|---|---|---|
| | ☐ Personal Weapon(s) Strikes | ☐ Chemical Agent Deployment | ☐ Impact Weapon |
| | ☐ Firearm(s) | ☐ Canine | ☐ Other. |

| Describe in detail the progression of force utilized during incident: | I secured inmate Pena to a fixed surface (the wall) while giving verbal direction to inmate Pena to get on the floor. I secured inmate Pena's left hand and continued verbal direction. Inmate Pena actively resisted moving to the floor. I applied a wrist lock technique to his left hand and moved inmate Pena to the floor and secured his left side. |
|---|---|

| Describe in detail outcome of use of force: | Inmate Pena was moved to the floor and was secured using wrist restraints. |
|---|---|

| Name (Print): Conroy, ▮▮▮▮ | Signature: | Title: C/O | Date of Report: 11/14/18 |
|---|---|---|---|
| Reviewing Supervisor Name (Print) | Signature: | Title: | Date of Review: |

| Staff Acknowledgement: | The signatures on this document acknowledge that this report has been completed in its entirety and reviewed as an accurate account of the Use of Force being reported. |
|---|---|

Exhibit 16



# Incident Report – Supplemental
## Connecticut Department of Correction

CN 6605
REV 10/01/18

Report Number: CRCC 2018-11-050     Page 6 of 39

☒ Facility/Unit: CRCC/ Corrigan          ☐ Parole Office/Unit: n/a

Date of Incident: 11/14/18          Time of Incident: 7:18     ☐ am ☒ pm

Incident Location : Echo Pod

Prepared By: [REDACTED] Nemeth     *They have*     Title: Correction Officer

*No O/C use was mentioned being use*

**Narrative:**
On 11/14/18, at approximately 7:18pm, I, Officer Nemeth responded to a Code [REDACTED] that was called in Corrigan's Echo Pod. When I arrived in Echo Pod, staff had separated two apparent inmate combatants and were in the process of applying restraints. I went to the inmate that seemed to be struggling with the most. This inmate turned out to be Inmate Pena, James #378668. I assisted with securing Inmate Pena's legs to the dayroom floor as other staff members completed the application of wrist restraints. Once restraints were applied, I took control of Inmate Pena's right side, utilizing a reverse wrist lock escort position. Per Lieutenant Bragdon, I assisted with the escort of Inmate Pena #378668 out the upper Echo Pod Sallyport to the Medical unit where he was cleared by medical staff. The escort continued with myself still controlling the right side of Inmate Pena by his right elbow and right wrist to the MIP unit showers for decontamination due to apparent O/C exposure. Once Pena had been decontaminated we escorted him to RHU where RHU staff conducted a strip search with zero findings. Inmate Pena was then housed in RHU cell #121 and RHU staff removed the wrist restraints through the cell door trap without further incident.

*Dosen't mention when the use O.C*

*Complete W/O Using O.C.*

*He was the 2nd one After C.O Bodin*

Reporting Employee Name (Print): Nemeth, [REDACTED]     Title: Correction Officer

Signature: [REDACTED]

Report Date: 11/14/2018          Report Time: 8:15     am ☒ pm

Type of Report: 2E     ☒ Individual          ☐ Supervisor Summary

_Exhibit 17_

# Incident Report – Supplemental
## Connecticut Department of Correction

CN 6605
REV 10/01/18

| Report Number: CRCC-2018-11-052 | | Page | of |
|---|---|---|---|

| ☒ Facility/Unit: CRCC-Corrigan | ☐ Parole Office/Unit: N/A | |

| Date of Incident: 11/14/2018 | Time of Incident 7:18 | ☐ am ☒ pm |

Incident Location: Echo-Pod

| Prepared By: ▨ Pearson | Title: Lieutenant |

*Not credible!*

**Narrative:**
On November 14, 2018 I, Lieutenant (Lt.) ▨ Pearson was assigned as Corrigan West Side Supervisor (1413) on Second shift 3:15pm to 12:23am.

At approximately 7:18pm a code ▨ was called (via radio) in the Echo-Pod during recreation (Echo101-Echo112) by Officer ▨ Bodin assigned as Echo. I responded to the area and upon arrival Chemical Agent had been administered and I observed the two inmates (identified as Inmate Pena, James #378668 and Inmate ▨ actively fighting while staff were separating and stabilizing them. At this time, I *LIED.* supervised Inmate ▨ and Lt ▨ Bragdon assumed the supervision of Inmate Pena. (see Summery)

Officer Bodin reported that both Inmate Pena and ▨ engaged in the fight and he gave multiple verbal orders to stop fighting. Officer Bodin attempted to separate them after failed verbal intervention. And was able to separate them with responding staff and secured Inmate Pena to the floor. Lt Bragdon did use chemical agent ▨ to effect the restraint placement and compliance.

*He was Second on He Lie* 

*Bragdon Testimony contradicts His.*

| Reporting Employee Name (Print): ▨ Pearson | Title: Lieutenant |

| Signature: _[signature]_ | |

| Report Date: 11/14/2018 | Report Time: 10:00 | ☐ am ☒ pm |

| Type of Report: 2E | ☐ Individual | ☒ Supervisor Summary |



Exhibit 18

# Incident Report – Supplemental
## Connecticut Department of Correction

CN 6605
REV 10/01/18

Report Number: CRCC-2018-11-052 | Page ⟨ / ⟩ of ⟨ /2 ⟩

☒ Facility/Unit: CRCC | ☐ Parole Office/Unit: N/A

Date of Incident: 11/14/2018 | Time of Incident: 7:18 | ☐ am ☒ pm

Incident Location: Echo Pod

Prepared By: ██████ Bragdon | Title: Lieutenant

Narrative:

On Wednesday November 14, 2018 I, Lieutenant ██████ Bragdon (1412), was posted as the East Side Supervisor for the 4:00PM-12:00AM shift. At 7:18PM Echo Pod Unit Officer ██████ Bodin (1470) announced a CODE ████ via hand held radio. *Somebody lieing hiv or Pearson* Upon my arrival to the unit I observed two inmates separated and staff attempting to secure them in wrist restraints. As I approached Inmate (I/M) ██████ staff were able to successfully apply wrist restraints to him. I then transitioned over to I/M Pena, James-#378668 who was not secured in wrist restraints. Due to I/M Pena not following verbal commands, being actively resistant and not allowing staff to place him in wrist restraints I administered a single burst of ████████ (OC) to the facial area of I/M Pena. The OC spray had its desired affect and staff secured I/M Pena in wrist restraints. *No Camera Was Present* S.B

At this time, I instructed staff to assist I/M Pena to a standing position with Officer ██████ Nichols (1437) securing the left side and Officer ██████ Nemeth (1436) securing the right side. I/M Pena was then escorted out of the unit to the Upper Echo Sally Port. Once inside the Upper Echo Sally Port under my direction Officer ██████ Hamilton (A-Pod #3) conducted sign on procedures to Go Bag #2 Camera #2 at 7:22PM and I conducted my supervisor's prelude. I/M Pena was then escorted to the medical unit where he was cleared by Correction Nurse (CN) ██████ Brown for Restrictive Housing (RHU) placement and also had superficial abrasions tended to by CN ██████ Stoodley. Upon completion of this assessment and clearance I/M Pena was escorted to the Medical In-Patient (MIP) unit showers where he was successfully decontaminated for his exposure to OC spray. *Hamilton was cleared At the unit*

Once decontamination was complete I/M Pena was escorted to RHU where RHU Officer ██████ Smith (1439) conducted a strip search with negative findings of contraband, provided with clean white under garments, a clean red RHU jump suit and secured in RHU Cell 121. I conducted my supervisor's epilogue and Officer Hamilton conducted sign off procedures at 7:36PM. I immediately took possession of the camera, downloaded a copy of the escort to DVD, issued it Video Tracking Number CRCC-VP-2018-1282, a chain of custody was completed and the video was secured in the Video Evidence Safe. Lieutenant ██████ Stadalnik conducted the Supervisors Video Review.

██████ 3 pictures were also taken of I/M Pena's injuries to his face. A Disciplinary Report (DR) and a Restrictive Housing Unit Status Order were generated and delivered to I/M Pena. I/M Pena's property was packed by Officer ██████ Conroy (1472). Property Matrix generated, property was secured in Admitting and Processing (AP) and a copy of the Property Matrix was delivered to I/M Pena.

While on Video Camera I asked I/M Pena if he would like to press outside charges against I/M ██████ if he would like Protective Custody and if he would like a Separation Profile. All of which he declined. I/M Pena declined to provide a written statement.

Once the CODE ████ was cleared I asked staff if there were any staff injuries ████████████████

Reporting Employee Name (Print): ██████ Bragdon | Title: Lieutenant

Signature: ⟨signature⟩

Report Date: 11/14/2018 | Report Time: 10:00 | ☐ am ☒ pm

Type of Report: 2E | ☐ Individual | ☒ Supervisor Summary

Exhibit 19



# Use of Force Report
## Connecticut Department of Correction

CN 6501
REV 10/18/2016

Provide responses to all of the following: *(If necessary, utilize CN6805, Incident Report- Supplemental, for further details).*

| Date of Incident: 11/14/18 | Time of Incident: 7:18pm | Incident Report Number: |
|---|---|---|
| Inmate Name: Pena, James | Inmate Number: 378668 | Location of Incident: Echo Pod |

| Purpose for using force (Check all that apply): | ☐ To Defend Self/Another | | ☒ To Maintain Safety/Security/Order | |
|---|---|---|---|---|
| | ☐ To Prevent Escape | ☐ Inmate Self Harm | ☐ Other (Describe below in detail) | |

| Describe in detail purpose of using force: | Inmate Pena was actively resisting staff members despite several verbal commands given to submit hands for handcuff placement |
|---|---|

| Nature of Threat: (Check all that apply) | ☒ Immediate (actively happening) | ☐ Imminent (about to happen) | ☐ Anticipated (expected to happen) |
|---|---|---|---|

| Identify highest level of threat: | ☐ Passive Resistance (Dead weight or non-compliance to Officer's lawful verbal direction, but offering no actively resistive movement) | ☒ Active Resistance (Actions such as pushing, pulling, evasive arm movement, flailing, flight, muscle tension, etc. to avoid control. Does not attempt to harm the Officer) |
|---|---|---|
| | ☐ Assaultive (non-deadly) (Agitated, combative state, physically assaultive actions and/or behavior that poses threat of injury to another (e.g., punching, kicking, clenching of fists, etc.) | ☐ Life Threatening/ Serious Bodily Injury. (Actions that may result in death or serious bodily injury) |
| | ☐ Other (Must describe): | |

| Describe in detail the nature of the highest threat level: | Inmate Pena was non-compliant with staffs verbal direction to stop resisting while myself and fellow staff members were attempting to apply wrist restraints. |
|---|---|

| Efforts made to avoid or minimize use of force (Describe in detail): | This officer gave multiple loud, clear and concise verbal commands to inmate Pena to submit his hands for handcuff placement. |
|---|---|

| Force utilized (Check all that apply) | ☒ Cooperative Control Holds | ☐ Nerve Compression(s) | ☐ Mechanical restraints |
|---|---|---|---|
| | ☐ Personal Weapon(s) Strikes | ☒ Chemical Agent Deployment | ☐ Impact Weapon |
| | ☐ Firearm(s) | ☐ Canine | ☐ Other |

| Describe in detail the progression of force utilized during incident: | Inmate Pena #378668 was resisting the application of wrist restraints following a Code ▆ called in his assigned housing unit (Echo Pod) in which he was a combatant. Unit staff was struggling with inmate Pena due to the fact that he did not respond to verbal direction to submit his hands for handcuff placement. This officer responded to the immediate area and gave multiple commands which proved to be unsuccessful forcing this officer to secure the upper torso of inmate Pena and apply a mandibular angle nerve compression in hopes of gaining compliance which was unsuccessful. Shortly thereafter Lt. Bragdon deployed Chemical Agent. Once the desired effect was achieved inmate Pena then complied and wrist restraints were able to be secured properly by staff. |
|---|---|

| Describe in detail outcome of use of force: | Inmate Pena was eventually placed in wrist restraints and escorted out of Echo Pod to Medical where he was cleared for RHU by treatment staff. Once cleared by medical/mental health staff inmate Pena was successfully decontaminated from his O/C exposure and escorted to RHU where he was strip searched yielding negative findings. Inmate Pena was secured in RHU cell 121 without further incident. No further details to report. End of report |
|---|---|

| Name (Print): Nichols, ▆ | Signature: | Title: C/O | Date of Report: 11/14/18 |
|---|---|---|---|
| Reviewing Supervisor Name (Print): ▆ | Signature: | Title: | Date of Review: |

| Staff Acknowledgement: | The signatures on this document acknowledge that this report has been completed in its entirety and reviewed as an accurate account of the Use of Force being reported. |
|---|---|

Exhibit 19



# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV 1/31/09

| Inmate name: James Peña | | Inmate number: 378160 |
|---|---|---|
| Facility/Unit: Corrigan C.I | Housing unit: RHU 121 | Date: 11-28-18 |

Submitted to: Dep Warden

Request: On 11/14/18 in Echo Pod around 7:18 Pm I was assaulted by another inmate
for reason that could of been Prevented if D.O.C workers with Authorityes took this
Matter More sireously. But upon Responding to the Code Blue, I would like to Report
the following Correctional officers for using unnessessary use of force, L.T. Bragdon
C.O. Nichols, and the other two C.O who accompany them, into Securing the Code Blue
and Securing me, while I was already pin to the wall first L.T. Bragdon at all times
use and said Some Vager gestures And while I was showing no Signs of Resisting I was
Slam to the ground on my face were C.O. Nichols and his two accosplishes who names I couldn't get
were punching me in the Gut, twisting my wrist, puling my arm back behind My back beyond it limitation
while laughing at me, talking about "Stop Exclaming you Report" At that Moment L.T. took it upon his self
and Spray me with Mace for no reason ~continue on back if necessary~ and said "Did you like to Rape s-xxt huh"

Previous action taken: At no time was I Resisting nor showing any force or impeding any of they orders
upon and before the Act of Use of force, I was on the ground with C.O. Nichols on my left ARM
~Brutial~
another C.O with his knee on my lower Back and his arm in presure against the Back of my neck
another C.O. on my Right ARA following the same Measure of obsessive force conducted by C.O. Nichols
under the supervision of Bragdon befor he Spray me. I would like Action of consequences to be taking on
the 3 C.O.S and L.T Bragdon for obsess ~continue on back if necessary~ ive use of force and Sanctions be taken to
each individul's

| Acted on by (print name): | Title: |
|---|---|

Action taken and/or response:

~continue on back if necessary~

| Staff signature: | Date: |
|---|---|

Exhibit 20

| **CONFIDENTIAL**<br>(FOR OFFICIAL USE ONLY) | Inmate name: James Peña | |
|---|---|---|
| | Inmate number: 378668 | Housing: B260 |

SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

The Reason why the Request with the Staff Response is not up here or Attach is because I never Recieve once So I attach a C.C. Hand copy. Also Note the incident took Place in corrigan. As Stated on Attach Request Form, ~~adores~~ which I haven't Recieve A response in the proper time Period In Accordance with the A.D. On 11/14/18 In Echo Pod (SRG Block) Upon Responding to ~~Because~~ A code Blue, I Was Assaulted By three C.O and L.T Who Secured Me During the code Blue C.O. Nichols and two other C.O. Who's name I couldn't read out followed by L.T. Bragdon Use obsessive Use of force By Sneakily Punching Me In the Ribs, twisting My wrist and Pulling My Arm behind My Back beyond it limitations All while I Was Secured, Pined Down on the Ground face first with three C.O.'s over Me one who happen to Be C.O. Nichols. During the obsessive Use of force C.O. Nichols and the other C.O. Who had My Right Arm Pin Used demeaning and Vorger language to justified there action - "They Told Me to "Stop ~~Bit~~ Bitching you Ripper" and continued there assault. All under the Acknowledgment of L.T. Bragdon, and under his Supervision. were he took it upon his Self to Pepper Spray Me while I Was Sudued and Secure By the following three C.O Ive Mention In this Grievance. Upon their Individual Assault and obsessive Use, L.T. Bragdon Also Iaught and said "Ohh So you like to Rape ~~Sit~~, Stop Breathing. Under that Period of time I Still Wasn't Resisting Nor Showing any form of Impeeding there orders. The Act of Such Correctional officers and L.T. is Cruel and Usual and is acting out of Spite Due to one of My criminal Charges, And I Would like for Justice to Be Done. To Resolve this Matter I Would like consequences and Santion to Be taken on the three Individual C.O.S, C.O. Nichols and the other two C.O. Who names I couldn't get, But could easy Be found on the Incident Report, C.O. Nichols Use on my Left Arm, C.O. Was on My Back, and another C.O. Was on My Right Arm" all while I Was Secured and Subdue while the their assaults took Place. I Would like them to get Suspended and A Writting up Aswell. I Would like Consequences and Santion to Be taken on L.T. Bragdon As Well for his Part and his Acknowledgment of the Sitituation. were a Suspension and A Writting is Done on his name and I Would also Like to compensated for Cruel and unusual.

| Inmate signature: *James Peña* | Date: 12·20·18 |
|---|---|

- For all remedies except health services, deposit this form in the Administrative Remedies box.
- For a health services issue, deposit this form in the Health Services box.

SECTION 5: DECISION OFFICIAL USE ONLY - DO NOT WRITE IN THE SPACE BELOW.

| Date Received: 1/4/19 | IGP #: 14/0-19-064AR | T#: T137-010875 |
|---|---|---|
| Disposition: REJECTED | | Date of Disposition: 1/11/19 |

Reason:

Per AD 9.6 Section 6C, a grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. The incident occurred 11/14/18 and your grievance is dated 12/20/18, this is over the 30 calendar day timeframe.

| ☐ You have exhausted DOC's Administrative Remedies. | ☑ This matter may be appealed to: DIA |
|---|---|
| Signature: *[signature]* | Date: 1/11/19 |

42

*Exhibit 21*

*Exhibit 21*



# STATE OF CONNECTICUT
## *DEPARTMENT OF CORRECTION*
### MACDOUGALL-WALKER CORRECTIONAL INSTITUTION
### 1153 EAST STREET SOUTH
### SUFFIELD, CONNECTICUT 06080

February 14, 2019

Pena, James # 378668
MacDougall- Walker C.I
1153 East Street South
Suffield CT, 06080

Inmate Pena,

You have been determined to be culpable of abusing the Administrative Directive 9.6, Inmate Administrative Remedies, in accordance with section 6, paragraph O, Abuse. This facility, specifically the Administrative Remedies Coordinator, has received eight Inmate Administrative Remedy forms from 12/21/2018-1/23/2019 submitted by you. Based on this information, denial of access to the remedy process is warranted. Your restriction is as follows:

Denial of access to the grievance procedure for six months concluding July 23, 2019.

This restriction allows you to file one grievance per month for six months under certain conditions. If you choose to disregard this notification, your restriction status may be modified or extended as appropriate. Grievances submitted must be a new issue not previously addressed through this process and in accordance with A.D. 9.6 Inmate Administrative Remedies. From this date, through the end of the restriction period July 23, 2019 you must abide the conditions for the restriction. If you violate the restriction disciplinary action will follow.

Grievances filed:
140-19-063, 140-19-064, 140-19-072, 140-19-073, 140-19-074, 140-19-075, 140-19-076, and 137-19-208.

I trust you will understand and comply with this decision. In accordance to this directive, you maintain the right to appeal this decision to the District Administrator's office.

Respectfully,

William Mulligan
Warden

cc: Deputy Warden Roach
    Administrative Remedy Coordinator Bennett

1

Exhibit 22

<table>
<tr>
<td rowspan="2"><strong>CONFIDENTIAL</strong><br>(FOR OFFICIAL USE ONLY)</td>
<td colspan="2">Inmate name: James Peña</td>
</tr>
<tr>
<td>Inmate number: 378668</td>
<td>Housing: B 2 84</td>
</tr>
</table>

SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

I am written this Grievance because My attach Request wasn't answer in a appointed true period In accordance to the A.d. Ive Previously been assaulted in corrigan. I wrote John Alti asking him "Why was i being place in a More Restrictive S.R.G. Block if I was the one that was assaulted. I Also wrote John alti explaining that all this could of been Prevented If they/he took my Matter Siriously. I Explaned to him Mutipal times that My Case Places Me in danger In a sRG block, and by Me being a non Affiliated Member IM Pretty Much alone. Due to his lack of taken My Request Siriously Ive been Assaulted. Since My Request hasn't been responded to, I would like Penalty action took out on John alti. i Would like to be remove from S.R.C and Place in P.C or PoPulation to Ressolve this. Please and thankyou

Inmate signature: James Peña          Date: 01/10/19     1/10/19

For all remedies except health services, deposit this form in the Administrative Remedies box.
For a health services issue, deposit this form in the Health Services box.

SECTION 5: DECISION OFFICIAL USE ONLY - DO NOT WRITE IN THE SPACE BELOW

<table>
<tr>
<td>Date Received: 1/23/19</td>
<td>IGP #: 137-19-208</td>
<td>T#:</td>
</tr>
<tr>
<td>Disposition: REJECTED</td>
<td colspan="2">Date of Disposition: 2-08-19</td>
</tr>
</table>

Reason:

Your grievance is rejected. Per Administrative Directive 9.6 Inmate Administrative Remedies, Section 6 (C) Filing a Grievance; the grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance.

☐ You have exhausted DOC's Administrative Remedies.     ☒ This matter may be appealed to: L2

Signature: [signature]          Date: 2-08-19

3

Exhibit 23

James Peña C.C. Hand copy 12/13/18

| CONFIDENTIAL | Inmate name: James Peña |
|---|---|
| (FOR OFFICIAL USE ONLY) | Inmate number: 378668  Housing: Walker B2 60 |

## SECTION 4: STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

I Am filing this SAID Grievance because my former Request has not been Responded to, nor has the matter Been rossolve in this in the opporite time. The reason for the grevence is because I was Assaulted on 11/14/18 in corrigan C.I Echo Pod Day Room of the S.R.G. Unit. I was assaulted by a Blood Member/Designated SRG Blood Member For 2 Reasons, 1) Because IM No longer A SRG Blood Member and 2) Because of my Current Criminal Charges (Sexual Assault 2nd) Which you dont have as a gang member or have white living in A SRG Block, Because I Wont be label a "Plate" With Means I'll Would be Assaulted or targeted by any gang member or New comers. I told, and also informed in writing D.O.C. Authority of my charges and situation upon First Being Lock up. I Also Informed the "SRG" Supervisor Consuelor John Aldi About my situation, I also have Many different Request forms mentioning my current situation, and the current threat or Danger upon my life with other gang members because of my criminal charges, a Green light/hit was Put on Me and I Was assaulted by a Blood SRG Member, I've Wrote Request to prevent this from Happen and D.O.C employee Such as, L.T Tannaro's, C.S. Aldi, Counselor Ramos and D.o.s. A San Diego Ignored the Risk for serious bodily harm and ignored the fact that I was in harms way and now I've been Assaulted and a stigma has been place on me due to my charges "Sexual Assault 2nd", my 8th and 14th Amendment Rights Were violated. The action of Such D.o.c. workers is delibrent difference and Continual Placement in SRG is A Act of Cruel and Usual Punishment to Ressolve this issue I Would like to be remove From SRG and Place in Population.

| Inmate signature: James Peña | Date: 12-18-18 |
|---|---|

- For all remedies except health services, deposit this form in the Administrative Remedies box.
- For a health services issue, deposit this form in the Health Services box.

## SECTION 5: DECISION (OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW)

| Date Received: 1/4/19 M | IGP #: 140-19-063 ar | T#: T131 010874 |
|---|---|---|
| Disposition: REJECTED | | Date of Disposition: 1/11/19 |

Reason:

Per AD 9.6 Section 6C, a grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance. The incident occurred 11/14/18 and your grievance is dated 12/18/18, this is over the 30 calendar day timeframe.

| ☐ You have exhausted DOC's Administrative Remedies. | ☑ This matter may be appealed to: D/A |
|---|---|
| Signature: | Date: 1/11/19 |

# Request for Removal from Protective Custody
## Connecticut Department of Correction

CN 9905
REV 4/29/15

| Inmate Name: Jordan Smith (A.K.A. Buck 50, J.Rock) | | Inmate number: 324287 |
|---|---|---|
| Facility/Unit: Bridgeport Correctional Center | | Date: July 2018 |

Removal from protective custody status is requested: ☐ voluntary  ☒ involuntary***

Reason for removal:
-Inmate #324287 Jordan Smith (aka Buck 50, J.Rock) was designated as a member of the Security Risk Group (SRG) in 2006. Since his initial designation inmate Smith has received sixteen (16) Class "A" Disciplinary Reports for SRG Affiliation. Inmate Smith is identified as a high ranking leader within the gang, specifically within the ▇▇ sub-set.
- Inmate Smith requested Protective Custody after making self-proclaimed statements indicating an issue with inmate ▇▇▇▇▇ ▇▇▇▇▇▇. Inmate ▇▇▇ is no longer in the custody of the Department of Correction and therefore poses no immediate threat to inmate Smith. Additionally, through the use of investigative measures and confidential sources of information the BCC Intelligence Unit was unable to verify inmate Smith's claims that he was in danger from former ▇▇▇▇▇▇ or any other members of the ▇▇ Security Risk Group.
-In May of 2018 the Intelligence Unit at Corrigan CI discovered ▇▇▇▇▇▇ that acknowledged inmate Smith's active presence as a leader and high ranking ▇▇▇ member. The paperwork outlined the ▇▇▇ rank structure identifying active members by their alias and position of rank. Inmate Smith also openly admits to having active communication with inmate ▇▇▇▇▇ ▇▇▇▇▇▇ through an individual who he identifies as ▇▇▇▇▇▇.
- A search of inmate Smith's property revealed he was in possession of a phone book which contained current contact information for active ▇▇▇ members. It also contained the phone numbers, social media information, and other contact information for high ranking members of several ▇▇▇▇ subsets. Inmate Smith had placed several phone calls where he utilized a third party to pass messages to ▇▇▇ members at Corrigan CI. In those phone calls inmate Smith directs the third party to have the other ▇▇▇ members check into Protective Custody and request to be housed at BCC with him. Lt. Papoosha documented that in the course of an interview with inmate Smith, he admitted to still being an active ▇▇▇ member and that he had no issues within the SRG program.
-The above information clearly documents inmate Smith's continued involvement with the ▇▇▇ SRG, both within and outside of the Department of Correction. Inmate Smith's continued involvement disproves his claim that the ▇▇▇ SRG poses a threat to his safety.

| Inmate signature: | Inmate refused to sign | *Concur with recommendation* |
|---|---|---|
| Staff witness: | *Pereira* | *Given opportunity* |
| Staff reviewer: | *M. Ko* | Title: CS | Date: 7/19/18 |

☑ Recommend approval ☐ Recommend denial

Unit Administrator Rationale: *Recommend removal from PC. Inm Smith continues to communicate with active sec ▇▇▇ members and holds a leadership position within the ▇▇▇▇▇ subset (High Ranking).*

| Unit Administrator: | A. HANNAH | Date: 07-19-18 |
|---|---|---|

☑ Recommend Release ☐ Recommend Continuation

Director of OCPM Rationale: *Recommend removal of PC status. Do unmmate, 3 342287 Smith. Jordan can complete the SRG program. Inmate continues to have SRG involvement. ▇▇ CS Ale. was recommend PC removal for*

| Director of OCPM: | Director Maiga | Date: 1/3/18 |
|---|---|---|

☑ Recommend approved*** ☐ Recommend denied

***If an involuntary removal is recommended, a hearing shall occur with a designated staff member from OCPM.

cc: Unit Administrator, inmate master file, inmate and Protective Custody file.