UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JAMES PENA,                              :
       Plaintiff,                     :
                                :
       v.                             :     Case No. 3:19cv124(KAD)
                                :
SCOTT SEMPLE, ET AL.,                    :
       Defendants.                    :

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, James Pena ("Pena"), currently incarcerated at the Corrigan-Radgowski Correctional Institution ("Corrigan-Radgowski"), initiated this civil rights action by filing a complaint against a number of Department of Correction ("DOC") employees. Upon initial review pursuant to 28 U.S.C. § 1915A(b), the court permitted the following claims to proceed: a Fourteenth Amendment excessive force claim against defendants Lieutenant Bragdon and Officers Nichols, John Doe #1 and John Doe #2 in their individual capacities; a Fourteenth Amendment failure to protect claim against defendants Counselor Supervisor Aldi, Unit Manager Tammaro and Captain Kelly in their individual capacities and Aldi in his official capacity; a Fourteenth Amendment deliberate indifference to mental health needs claim to proceed against defendant Mental Health Worker Brennan in her individual capacity, and a First Amendment retaliation claim to proceed against Captain Kelly in his individual capacity.[1] *See* Initial Review Order, ECF No. 12, at 18.

On February 20, 2020, Pena filed a motion seeking summary judgment as to his Fourteenth Amendment claims of excessive force and failure to protect. *See* Mot. Partial Summ.

---

[1] All defendants shall be referred to herein by their last names.

J., ECF No. 39.  On July 23, 2020, the court denied the motion without prejudice because it did

not substantially comply with the requirements of Local Rule 56(a)1 and (3), D. Conn. L. Civ. R.

and could not fairly be considered on the merits. The court also dismissed the Fourteenth

Amendment excessive force claim asserted against Correctional Officers Doe #1 and Doe #2

without prejudice pursuant to Rule 4(m), Fed. R. Civ. P.  *See* Ruling Mot. Partial Summ. J., ECF

No. 54.

All defendants now seek summary judgment as to all remaining claims on the ground that

Pena did not properly exhaust his available administrative remedies prior to filing this lawsuit.

For the reasons set forth below, the motion is granted.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute

as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule

56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107,

113-14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at

113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are

material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard

applies whether summary judgment is granted on the merits or on an affirmative defense. . . ."

*Giordano v. Market Am., Inc.,* 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its

motion and identifying the admissible evidence it believes demonstrates the absence of a genuine

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving

party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[2]

---

[2]  The facts are taken from the Defendants' Local Rule 56(a) Statement ("Defs.' L.R. 56(a)1"), [ECF No. 51-2], and Exhibits A through M, [ECF. Nos. 51-4 to 51-16], filed in support of the Local Rule 56(a)1 Statement. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph. Each denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. Pena was advised by the Defendants of these requirements. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF No. 51-3. Although Pena filed a document titled Statement of Disputed Factual Issues, ECF No, 55, at 5-6 and a document titled Statement of Material Facts Not in Dispute, ECF No. 55, at 7-8, neither document responds to the Defendants' Rule 56(a)(1) statement with either admissions or denials and nor do they contain citations to record evidence. As Pena has not filed a proper Local Rule 56(a)2 Statement, the Defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2."). However, the court considers Pena's two declarations/affidavits, ECF No. 55 at 9-12, filed in opposition to the motion for summary judgment and exhibits in support of those declarations/affidavits, ECF No. 55 at 13-30, as well as the verified Complaint, ECF No. 1, which may be considered as an affidavit for summary judgment purposes. *See Curtis v. Cenlar* FSB, 654 F. App'x 17, 20

On January 25, 2019, Pena filed the complaint in this action.  Defs.' L.R. 56(a)1 ¶ 1. Each of Pena's claims arise from Pena's confinement in the Security Risk Group program at Corrigan-Radgowski from January 4, 2018 to November 29, 2018.  *Id.* ¶¶ 2, 4.  In his complaint, Pena alleges that he was assaulted by another inmate on November 14, 2018; that he had warned Kelly, Aldi and Tommasso that he was at risk for an assault but that they failed to protect him; and that the defendants responded to the incident and in so doing used excessive force on Pena. Pena also alleges that Brennan failed to provide necessary mental health treatment following the assault and prior to his transfer from Corrigan- Radgowski on November 29, 2018.

Pena was a pretrial detainee from October 6, 2017 until November 26, 2018.  *Id.* ¶ 5.  On November 29, 2018, prison officials at Corrigan-Radgowski transferred Pena to MacDougall-Walker Correctional Institution ("MacDougall-Walker").  *Id.* ¶ 7.  Pena was housed at MacDougall-Walker from November 29, 2018 until January 28, 2019.  *Id.* ¶ 32.  Pena was consigned to a prison facility in Massachusetts from January 28, 2019 until February 14, 2019, when prison officials in Massachusetts returned Pena to MacDougall-Walker.  Ex. C, ECF No. 51-6.  Pena remained at MacDougall-Walker until March 28, 2019.  *Id.*

Defendants asserted the affirmative defense of failure to exhaust administrative remedies in their answer to the complaint.  *Id.* ¶ 8.  State of Connecticut Department of Correction Administrative Directive 9.6 sets forth Inmate Administrative Remedies.  *Id.* ¶ 9; Ex. F, Admin. Dir. 9.6 (in effect as of August 15, 2013), ECF No. 51-9.  For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not

---

(2d Cir. 2016) ("Though we may treat [plaintiff's] verified complaint 'as an affidavit for summary judgment purposes,' the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge.") (quoting *Conlon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6). *Id.*

Under Administrative Directive 9.6, an inmate or detainee must first seek informal resolution of an issue, in writing, using Inmate Request Form CN 9601. *Id.* ¶ 10; Admin. Dir. 9.6(6)(A). The appropriate official has fifteen business days from receipt of the written request to respond to it. *Id.* If the inmate or detainee is not satisfied with the response to the informal request to resolve the issue or does not received a response to the request, he or she must file a Level 1 grievance and attach the response to the Inmate Request for CN 9601 or explain why the response is not attached. *Id.* ¶ 11; Admin. Dir. 9.6(6)(C). The Level 1 grievance must be filed within thirty calendar days of the "occurrence or discovery of the cause of the" issue raised in "the grievance." *Id.* ¶ 12. The appropriate official has thirty business days from receipt of the Level 1 grievance to respond to it. *Id.*; Admin. Dir. 9.6(6)(I). If the inmate or pretrial detainee is not satisfied with the response to the Level 1 grievance or does not receive a timely response to grievance, he or she may submit a Level 2 appeal. *Id.* ¶ 13; Admin. Dir. 9.6(I) and (K). A Level 2 appeal is the final level of appeal for all inmate grievances except for those that (a) challenge department policy; (b) challenge the integrity of the grievance procedures; or (c) exceed the thirty-business-day limit for responding to a Level 2 appeal. *Id.* ¶ 14; Admin. Dir. 9.6(K).

Inmates and Pretrial Detainees at Corrigan and MacDougall-Walker are required to file their Level 1 grievances and Level 2 appeals in a designated "Administrative Remedies" box that is clearly marked and accessible to the inmates and detainees at both facilities. *Id.* ¶ 18. Staff members at Corrigan-Radgowski and MacDougall-Walker collect the Level 1 grievances and Level 2 appeals every weekday and the grievances and appeals are entered in a Grievance Log

(Form CN 9608) upon receipt.  *Id.* ¶ 19.

Michelle King is the Administrative Remedies Coordinator at Corrigan-Radgwoski and in that position, is the keeper of the Grievance Logs for both Level 1 grievances and Level 2 appeals filed by inmates and detainees at that facility.  *Id.* ¶ 20.  Jessica Bennett is the Administrative Remedies Coordinator at MacDougall-Walker and in that position, is the keeper of the Grievance Logs for both Level 1 grievances and Level 2 appeals filed by inmates and detainees at that facility.  *Id.* ¶ 31.

Pena filed seven Level 1 grievances and five Level 2 appeals with respect to events occurring at and during his confinement at Corrigan-Radgowski from October 18, 2017 to November 29, 2018. *Id.* ¶ 21.[3]  On July 18, 2018 Pena filed a Level 1 grievance in which he claimed that he had submitted requests in June 2018 to be removed from the Security Risk Group program housing unit and placed in protective custody.  *Id.* ¶ 25.  On February 1, 2019, a prison official rejected the grievance as untimely because it had been filed beyond the thirty-calendar-day period for filing a Level 1 grievance.  *Id.*  On February 16, 2019, Pena filed a Level 2 appeal of the rejection of the grievance.  *Id.*  On March 27, 2019, a prison official rejected the appeal because the Level 1 grievance had been filed in an untimely manner.  *Id.*

On December 18, 2018 Pena filed a Level 1 grievance in which he claimed that upon his admission to the Security Risk Group program at Corrigan-Radgowski, he had informed Aldi and Tammaro that his life or safety was in danger but they failed to protect him from an assault by another inmate in the Security Risk Group program which occurred on November 14, 2018.

---

[3] The Defendants indicate that all of these grievances and appeals were filed while Pena was confined at Corrigan-Radgowski. Given the dates on the grievances and appeals and in light of the undisputed dates upon which Pena was at Corrigan Radgowski, it appears that the grievances and appeals relate to his time at Corrigan-Radgowski but many were filed after his transfer to MacDougal-Walker.

*Id.* ¶ 23.  On January 11, 2019, a prison official rejected the grievance as untimely because it had been filed beyond the thirty-calendar-day period for filing a Level 1 grievance.  *Id.*  On January 18, 2019, Pena filed a Level 2 appeal of the rejection of the grievance.  *Id.*  On February 14, 2019, a prison official rejected the appeal because the Level 1 grievance had been filed in an untimely manner.  *Id.*

On December 20, 2018, Pena filed a Level 1 grievance in which he claimed that Nichols, Doe #1, Doe #2 and Bragdon used excessive force against him on November 14, 2018.  *Id.* ¶ 24. On January 11, 2019, a prison official rejected the grievance as untimely because it had been filed beyond the thirty-calendar-day period for filing a Level 1 grievance.  *Id.*  On January 18, 2019, Pena filed a Level 2 appeal of the rejection of the grievance.  *Id.*  On February 14, 2019, a prison official rejected the appeal because the Level 1 grievance had been filed in an untimely manner.  *Id.*

On January 15, 2019, Pena filed a Level 1 grievance in which he claimed that Nichols, Doe #1, Doe #2 and Bragdon used excessive force against him on November 14, 2018.  *Id.* ¶ 26. On February 1, 2019, a prison official rejected the grievance as repetitive because a prior grievance regarding the same subject matter was still being processed.  *Id.*

On January 17, 2019, Pena filed a Level 1 grievance in which he requested that camera footage of the assault on him by another inmate be preserved, that the warden be disciplined for failing to respond to his request dated November 29, 2018 and that Aldi and Tammaro be disciplined for failing to treat his initial complaints regarding his safety seriously.  *Id.* ¶ 28.  On February 1, 2019, a prison official rejected the grievance as repetitive because a prior grievance regarding the same subject matter was still being processed.  *Id.*  On February 16, 2019, Pena

7

filed a Level 2 appeal of the rejection of the grievance. *Id.* On March 27, 2019, a prison official rejected the appeal because the Level 1 grievance had been filed while a prior similar grievance was still being processed. *Id.*

On January 18, 2019, Pena filed a Level 1 grievance in which he claimed that he had discovered a copy of a request that he had submitted to Kelly seeking to be removed from the Security Risk Group program housing unit and placed in protective custody. *Id.* ¶ 27. Pena claimed that Kelly had not responded to his request and that he was renewing his request to be removed from the Security Risk Group program and placed in protective custody. *Id.* On February 1, 2019, a prison official rejected the grievance as repetitive because a prior grievance regarding the same subject matter was still being processed. *Id.*

Also on January 18, 2019, Penal filed a second Level 1 grievance in which he challenged his initial placement in the Security Risk Group Program upon his admission to the Department of Correction as a pretrial detainee. *Id.* ¶ 29. He requested to be placed in general population and that his designation as a Security Risk Group member be removed. *Id.* On February 1, 2019, a prison official rejected the grievance because Pena had already filed an appeal of his placement in the Security Risk Group program in January 2018. *Id.* On February 16, 2019, Pena filed a Level 2 appeal of the rejection of the grievance. *Id.* On March 27, 2019, a prison official rejected the appeal because Pena had already filed an appeal of his placement in the Security Risk Group program. *Id.*

In addition, from November 29, 2018 to February 22, 2019, Pena filed two Level 1 grievances. *Id.* ¶ 32. On January 10, 2019, Pena filed a Level 1 grievance in which he claimed that he had been assaulted at Corrigan-Radgowski and had asked Aldi why he was being

transferred to MacDougall-Walker which was a more restrictive prison facility when he had been the victim of the assault.  *Id.* ¶ 34.  He suggested that he had informed Aldi that his safety was at risk prior to the assault.  *Id.*  Pena sought to be removed from the Security Risk Group program and placed either in general population or in protective custody.  *Id.*  On February 8, 2019, a prison official rejected the grievance as untimely because it had been filed beyond the thirty-calendar-day period for filing a Level 1 grievance.  *Id.*  Pena did not file a Level 2 appeal of the rejection of this grievance.  *Id.*

On February 16, 2019, Pena filed a Level 1 grievance in which he claimed that his re-affiliation as a member of a Security Risk Group in 2013 was not in accordance with any Department of Correction Administrative Directive.  *Id.* ¶ 35.  On March 8, 2019, a prison official determined that Pena's allegations could not be substantiated and denied the grievance. *Id.*  Pena did not file a Level 2 appeal of the rejection of this grievance.  *Id.*

On February 14, 2019, Warden Mulligan sent a letter to Pena advising him that he had been placed on grievance restriction for a six-month period ending July 23, 2019 for abusing the administrative remedies procedure by filing eight grievances during the period from December 21, 2018 to January 23, 2019.  *Id.* ¶ 35.  Under the grievance restriction, Pena was permitted to file only one grievance per month.  *Id.* ¶ 36.  Pena claims that he received verbal notification of this grievance restriction from a counselor on January 20, 2019.  Pena Aff. ¶ 12, ECF No. 55, at 10.

As discussed, Pena also brings a claim for deliberate indifference to his mental health needs against Brennan.  State of Connecticut Department of Correction Administrative Directive 8.9 sets forth Inmate Administrative Remedies for Health Services.  *Id.* ¶ 39; Ex. H, Admin. Dir.

8.9 (in effect as of July 24, 2012), ECF No. 51-11.  A Health Services Review request must be submitted on Form CN 9602 and deposited in a box labeled Health Services Remedies or Health Services Reviews.  *Id.* ¶ 40.  A Health Services Remedies/Reviews box is located in each housing unit.  *Id.*; Admin. Dir. 8.9(6), 8.9(11), 8.9(12).  A log is maintained at each prison facility to keep track of all Health Services Review requests submitted by inmates and detainees at the facility.  *Id.* ¶¶ 41-42.  Colleen Gallagher is employed by the Department of Correction as a Correctional Health Services Program Director.  *Id.* ¶ 43.  In her role as Director of the Correctional Health Services Program, she is the Health Services Division designee in charge of reviewing Health Services Review requests submitted pursuant to Administrative Directive 8.9 by inmates and detainees at all Department of Correction facilities.  *Id.*

From 2017 to 2019, Pena filed only one Health Services Review request.  *Id.* ¶ 44.  On June 17, 2019, he filed a Health Services Review request claiming that either Brennan or a Psychiatrist at Corrigan-Radgowski had discontinued a medication that had been prescribed to help him sleep and a medication that had been prescribed to him for anxiety.  *Id.* ¶ 44, 47; Ex. M, ECF No. 55-51-16.  He requested that a medical staff member re-prescribe these two medications.  *Id.* ¶ 47; Ex. M, ECF No. 51-16.  On July 11, 2019, an administrative remedies coordinator returned the request without disposition because Pena had not attempted to informally resolve the issue prior to filing the request.  *Id.*  Pena did not re-submit the Health Services Review request or appeal the return of the initial request.  *Id.* ¶ 48.

**Discussion**

Defendants Aldi, Tammaro, Kelly, Bragdon, Nichols and Brennan argue that Pena failed to properly exhaust his remedies available under State of Connecticut Department of Correction

Administrative Directives 9.6 and 8.9 prior to filing this lawsuit.  In response, Pena contends that

he attempted to exhaust his available remedies, but the prison officials ignored, threw out or

refused to process his grievances.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies

before filing a federal lawsuit relating to prison conditions.  *See* 42 U.S.C. § 1997e(a) ("No

action shall be brought with respect to prison conditions under section 1983 of this title, or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted.").  This exhaustion requirement

applies to all claims regarding "prison life, whether they involve general circumstances or

particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the

administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532

U.S. 731, 741 (2001).  Furthermore, prisoners must comply with all procedural rules regarding

the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548

U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ...

(so that the agency addresses the issues on the merits) ... [and] demands compliance with agency

deadlines and other critical procedural rules").  An inmate's failure to exhaust administrative

remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___

U.S.___, 136 S. Ct. 1850, 1858 (2016).

Exhaustion of administrative remedies is an affirmative defense.  Thus, the defendants

bear the burden of proof.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Once the defendants

establish that administrative remedies were not exhausted before the inmate commenced the

action, the plaintiff must establish that the administrative remedy procedures were not available to him under *Ross*.  *See id.*

### Administrative Directive 9.6

There is no dispute that the administrative remedies are set forth in State of Connecticut Department of Correction Administrative Directive 9.6, entitled Inmate Administrative Remedies, and were in effect as of October 18, 2017 when Pena arrived at Corrigan-Radgowski and remained in effect through and after his transfer to MacDougall-Walker on November 29, 2018.  *See* Defs.' L.R. 56(a)1 ¶ 9; Ex. F, Admin. Dir. 9.6 (in effect as of August 15, 2013), ECF No. 51-9.  Nor does Pena dispute that he was familiar with the Administrative Remedies procedures set forth in that Directive during and after his confinement at Corrigan-Radgowski from October 2017 to November 2018.  *See* Compl. at 3; Decl. Opp'n Mot. Summ. J., ECF No. 55, at 11; Exs., ECF No. 55, at 13-27.

For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in subsections (B) through (I) of Administrative Directive 9.6(4), the applicable remedy is the Inmate Grievance Procedure set forth in 9.6(6).  *See id.* at 9.6(6).  Each request for administrative remedy must be submitted on a separate form.  *See id.* at 9.6(5)(E)(2).  The request and action sought must be stated clearly and simply.  *See id.* at 9.6(5)(E)(3).

An inmate must first attempt to resolve the matter informally.  He may attempt to verbally resolve the issue with an appropriate staff member or supervisor.  *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt using a specific form, CN 9601, and send that form to the appropriate staff member.  *See id.*  If

an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, either a denial or rejection, or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). A Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M). Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 appeals to which there has been an untimely response, or no response, by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed

13

within five calendar days from the inmate's receipt of the decision on the Level 2

appeal.  *See id.*  A Level 3 appeal of the District Administrator's failure to dispose of the Level 2

appeal in a timely manner must be filed within thirty-five days of the filing of the Level 2

appeal.  *See id.* at 9.6(6)(M).  A Level 3 appeal is reviewed by the Commissioner of Correction

or his or her designee with a response provided within thirty business days of receipt of the Level

3 appeal.  *See id.* at 9.6(6)(L).

### Administrative Directive 8.9

There is no dispute that the administrative remedies for medical and mental health care

claims are set forth in State of Connecticut Department of Correction Administrative Directive

8.9, entitled Administrative Remedy for Health Care,  and were in effect as of October 18, 2017

when Pena arrived at Corrigan-Radgowski and remained in effect through and after his transfer

to MacDougall-Walker on November 29, 2018.  *See* Defs.' L.R. 56(a)1 ¶ 9; Ex. H, Admin. Dir.

8.9 (in effect as of July 24, 2012), ECF No. 51-11.  Nor does Pena dispute that he was familiar

with the Administrative Remedies procedures set forth in that Directive during and after his

confinement at Corrigan-Radgowski from October 2017 to November 2018.  *See* Compl. at 3;

Decl. Opp'n Mot. Summ. J., ECF No. 55, at 11; Exs., ECF No. 55, at 13-27.

Administrative Directive 8.9 provides Health Services Review procedures to address two

types of issues or claims related to the medical, dental or mental health care of an inmate:

(1) Diagnosis and Treatment issues and (2) Administrative health care issues involving a

procedure, practice, policy or the improper conduct of a health services

provider.  *See* Administrative Directive 8.9(9)(A) & (B).

As relevant here, an inmate seeking review of an issue involving a

diagnosis or treatment must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor. *Id.* at 8.9(10). The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request. *Id.* If the informal resolution of the inmate's issue is unsatisfactory or unsuccessful, the inmate may apply for a Health Services Review using the Inmate Administrative Remedy Form, CN 9602, and checking off either the Diagnosis/Treatment box or the All Other Health Care Issues box for an administrative issue. *Id.* at 8.9(11) & (12).

If the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental or mental health condition, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible. *Id.* at 8.9(11)(A). If, after the appointment, the physician, dentist, psychologist, psychiatrist or APRN concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy. *Id.* If the physician, dentist, psychologist, psychiatrist or APRN reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. *Id.* at 8.9(11)(B).

Defendants argue that Pena did not properly exhaust his available administrative remedies under Administrative Directive 9.6 as to his claims of excessive force, failure to protect and retaliation because he either failed to file Level 1 grievances in a timely manner or failed to

fully exhaust his administrative remedies before filing this action.  Defendants further argue that

Pena made no attempt to exhaust his available administrative remedies under Administrative

Directive 8.9 as to his claim that Brennan was deliberately indifferent to his mental health needs

following the assault on November 14, 2018, but before his transfer to MacDougall-Walker on

November 29, 2018.  In support of these arguments, the defendants have submitted the

Declarations of Correctional Counselor King, an Administrative Remedies Coordinator at

Corrigan-Radgowsk; Correctional Counselor Jessica Bennett, an Administrative Remedies

Coordinator at MacDougall-Walker; and Colleen Gallagher, a Correctional Health Services

Program Director, who acts as the Health Services Division designee in charge of reviewing

Health Services Review requests submitted by inmates and detainees at all facilities pursuant to

Administrative Directive 8.9.  *See* Defs.' L.R. 56(a)1, Exs. A, D, G, ECF Nos. 51-4, 51-7, 51-10.

### Deliberate Indifference to Mental Health Needs Claim

Correctional Health Services Program Director Gallagher reviewed the Health Services

Review logs for the years 2017, 2018 and 2019 and found no requests for Health Services

Review having been filed by Pena prior to June 17, 2019.  Ex. G, Gallagher Decl. ¶¶ 7-8.  That

request, filed well after Pena commenced this action at the end of January 2019, is addressed to a

decision by a mental health provider at Corrigan-Radgowski to discontinue two medications that

had been prescribed to Pena.  Ex. M, ECF No. 51-16.  The claim asserted in this action arises out

of Brennan's alleged refusal or failure to examine or treat Pena between November 14, 2018 and

November 29, 2018. Pena has not filed any evidence which would raise a genuine issue of

material fact as to whether he exhausted his administrative remedies with respect to this claim.

Nor has he alleged or submitted evidence to demonstrate that the remedies in Administrative

16

Directive 8.9 were unavailable to him. Accordingly, Brennan's motion for summary judgment as to the Fourteenth Amendment deliberate indifference to mental health needs claim is granted.

**Excessive Force, Failure to Protect, Retaliation Claims**

Administrative Remedies Counselor King reviewed the grievance and grievance appeal logs at Corrigan-Radgowski and Administrative Remedies Coordinator Bennett reviewed the Grievance and grievance appeal logs at MacDougall-Walker. As detailed above, their review revealed that the Level 1 grievances and Level 2 appeals filed by Pena regarding the November 14, 2018 excessive force claim and the November 14, 2018 failure to protect claim had been either rejected as untimely or rejected as repetitive. *See* Ex. A, King Decl. ¶¶ 7-10; Ex. D, Bennett Decl. ¶¶ 8-11; Ex. I, Grievances and Appeals, ECF No. 51-12; Ex. J, Grievances, ECF No. 51-13. Their review further revealed that Pena filed no grievance or appeal in which he accuses Kelly of a retaliatory transfer. Pena does not offer evidence to dispute that the Level 1 grievances and Level 2 appeals regarding the excessive force and failure to protect claims were rejected as either untimely or repetitive. Nor has he offered evidence to dispute the fact that none of the grievances that he filed in December 2018, January 2019 or February 2019 included the claim that Kelly retaliated against him for making complaints by transferring him to MacDougall-Walker on November 29, 2018.

The Supreme Court has held that 42 U.S.C. § 1997e(a) requires "proper exhaustion" which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford*, 548 U.S. at 90-91. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir.

2006) (quoting *Woodford*, 548 U.S. at 83-84).

With respect to the failure to protect claim only, Pena submitted copies of Inmate Requests, CN 9601 forms, that he filed in October 2017 and May and June 2018 and Level 1 grievances that he filed in January, May and August 2018.  He claims that he did not receive responses to these requests and grievances.  *See* Mem. Opp'n Mot. Summ. J. and Exs. 1-9, ECF No. 55, at 2-3, 13-27.  These requests and grievances pertain to his attempts to inform Aldi, Tammaro and Kelly that he was at risk to be attacked or harmed by another Security Risk Group member because of the nature of his pending criminal charges.  *See id.*  Pena contends that these documents demonstrate that he attempted to exhaust his remedies, but the defendants or other prisoner officials failed to respond to the requests or grievances. Pena offers no similar documentation or evidence with respect to his excessive force claim or his retaliation claim. Accordingly, there is no genuine issue of material fact as to whether Pena failed to properly exhaust the excessive force claim or the retaliation claim. He did not and summary judgment is granted as to these claims.

As to the failure to protect claim, the documents submitted do not raise a genuine issue of material fact as to whether Pena properly exhausted his administrative remedies under A.D. 9.6 with respect to this claim. Even if the court accepts that Pena filed but did not receive responses to grievances he filed in January, May, July and August 2018, he was not precluded from filing Level 2 appeals from those Level 1 grievances.  Indeed, A.D. 9.6 specifically contemplates such a circumstance and allows an inmate to appeal the failure of a prison official to respond to a Level 1 grievance within the thirty-business-day period.  *See* Ex. F, Admin. Dir. 9.6(6)(G), (I), (M), ECF No. 51-9.  Consequently, the failure of prison officials to respond to Pena's

grievances, even if filed, did not excuse him from fully exhausting his remedies as to the failure to protect claim prior to filing this action.

In his one-page supplemental memorandum in opposition to the motion for summary judgment, Pena states that he was on grievance restriction as of January 20, 2019 and that Department of Correction employees ignored his grievances or maliciously denied his grievances after he filed this action.  *See* Suppl. Mem. Opp'n Mot. Summ J., ECF No. 56.  However, Warden Mulligan did not place Pena on grievance restriction until January 24, 2019, well past the time for Pena to file timely Level 1 grievances as to his claim that Bragdon and Nichols used of excessive force against him on November 14, 2018, his claim that Aldi, Tammaro and Kelly failed to protect him from assault on November 14, 2018 and his claim that Kelly transferred him on November 29, 2018 in retaliation for making complaints.  Thus, his placement on grievance restriction on January 24, 2019 does not excuse his failure to timely exhaust his available remedies before filing this action.

Further, attempts to exhaust administrative remedies after filing a lawsuit do not constitute proper exhaustion.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available are exhausted.") (emphasis added).  Under Administrative Directive 9.6, a Unit Administrator has thirty business days to respond to a Level 1 grievance and a District Administrator has thirty business days to respond to a Level 2 appeal.  Pena chose to file his action before prison officials responded to his January 15, 2019, January 17, 2019 and January 18, 2019 Level 1 grievances and before prison officials had responded to his Level 2 appeals of

his December 18, 2018 and December 20, 2018 Level 1 grievances.

Pena contends that in *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), the Second Circuit held that special circumstances could excuse an inmate from exhausting his administrative remedies. Pena does not identify any special circumstances to which he was subjected that might excuse his failure to timely or properly exhaust his remedies. Furthermore, Pena's reliance on the special circumstances exception set forth in *Giano* is unavailing because the Supreme Court in *Ross* clearly rejected judicially created special exceptions to the exhaustion requirement of section 1997e(a) such as the exception set forth in *Giano*. 136 S. Ct. at 1862 ("Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement."). The only exception to the exhaustion requirement of section 1997e(a) is textual exception that an inmate need not exhaust remedies that are unavailable to him or her. *Id.* at 1858.

Pena asserted no facts or offered no evidence that the administrative remedies in Administrative Directive 9.6 were unavailable to him with regard to any of the claims asserted herein. The defendants have met their burden that they are entitled to judgment as a matter of law for Pena's failure to properly exhaust his administrative remedies with respect to the excessive force, failure to protect and retaliation claims.

**Conclusion**

For all of the foregoing reasons, the Defendants' Motion for Summary Judgment, [**ECF No. 51**], is **GRANTED.** The Clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Bridgeport, Connecticut this 28th day of January 2021.

_____/s/_____
Kari A. Dooley
United States District Judge